HERMAN J. PAHLMAN *et al.*

*v.*

ALLAN H. TAYLOR.

1. GUARANTY — *when indorsement in blank creates.* Where the name of a person not a party to a note is indorsed upon it before delivery, the presumption is, in the absence of evidence to the contrary, that he indorsed as guarantor.

2. ALTERATION — *materiality of, and effect on guarantors.* An alteration of a promissory note, by adding the words, " payable at 53 Lake street," at the time of its delivery, with the consent of the maker, is material, and if done without the knowledge or consent, express or implied, of persons who had placed their names upon the back of the note as guarantors before delivery, will operate to discharge them.

3. SAME — *when consent to, will be implied — when consented to by partner.* Where a note was executed by one partner for money to be loaned to the firm, and the other two partners indorsed their names upon the same before delivery, as guarantors, and intrusted the same with the maker to procure the money, which he did, and the latter consented at the time of its delivery that the payee should add the words, " payable at 53 Lake street,"

and thereupon received a check for the loan, payable to the firm, it was *held* that the maker, as partner of the guarantors, had *implied* authority to give his consent to the alteration, and that, therefore, the guarantors were not discharged by the alteration so made without their actual knowledge.

4. PARTNERSHIP — *implied power of partner to bind his copartners.* Every partner possesses full and absolute authority to bind all the partners by his acts or contracts in relation to the business of the firm, in the same manner, and to the same extent as if he held full powers of attorney from them; and as between the firm and third parties who deal with it in good faith and without notice, it is a matter of no consequence whether the partner is acting fairly with his copartners in the transaction or not, if he is acting within the apparent scope of his authority and professedly for the firm.

5. And where a firm holds a person out to the world as a partner, in a particular business, they authorize the world to deal with him as possessing all the powers of a partner.

6. Where a firm had authorized a partner to borrow money for it, and allowed him frequently to fill up notes over their blank signatures, and to sign the names of the members of the firm to obligations, and such partner ·borrowed money for the use of the firm, upon his note, with the names of his copartners indorsed thereon as guarantors, it was *held*, that it did not matter even if their names were so signed by such partner, as he was held out to the world as having authority to do what he did, and that he had power to consent to an alteration of the note, as to the place of payment, at the time he delivered the same and obtained the money thereon, and that the other partners were liable on such guaranty.

7. PRACTICE — *when special verdict is found at the same time with a general finding.* In a suit against two who signed their names upon the back of a promissory note as guarantors, the jury found a general verdict in favor of the plaintiff, who was the payee, and a special verdict that the note had been altered in a material manner, by the payee, after the defendants had indorsed the same, without their knowledge or authority, but with the knowledge and authority of the maker: *Held,* that the special finding was not inconsistent with the general verdict, as it did not show that the maker had no authority to consent to the change for the defendants as their partner.

8. If the special finding can, upon any hypothesis, be reconciled with the general verdict, the latter will control, and the court will not render judgment against the party who has the general verdict in his favor.

9. LAW AND FACT. Express knowledge and express authority are questions of fact, but implied knowledge and implied authority are conclusions of law. Therefore, where the jury find, in a special verdict, that an act

was done without the knowledge or authority of a party, it will be under-stood to have reference to express knowledge and authority only.

Appeal from the Circuit Court of Cook county; the Hon. John G. Rogers, Judge, presiding.

This was an action of assumpsit, brought by Allan H. Taylor against Herman J. Pahlman and D. G. Rush. The opinion of the court states the facts of the case. The defendants bring the record here by appeal.

Mr. Allan C. Story, and Mr. Rufus King, for the appellants.

Mr. John Lyle King, and Mr. James Frake, for the appellee.

Mr. Justice Scholfield delivered the opinion of the Court:

This was an action of assumpsit, by appellee against appellants as guarantors of a promissory note executed by one Charles Welsh to appellee, on the 13th day of June, 1870, payable fourteen months after date, for $5,000, with interest at the rate of ten per centum per annum. Appellants' names were indorsed in blank before the note was delivered, and the first question presented is, did they thereby assume the liability of guarantors, or only that of successive indorsers?

The decisions of the Supreme Court of Indiana, referred to by appellants, seem to sustain the position for which they contend, but in so far as they do so, they are in conflict with previous decisions of this court. It is there held that an indorsement in blank of an instrument not negotiable, made at the date of the contract, and unexplained by extrinsic evidence, confers upon the payee authority to hold the indorser liable, on the original contract, as surety, but that a similar indorsement of negotiable paper renders him liable only as indorser, with the ordinary rights and privileges incident to that character.

Promissory notes are made, by our statute, negotiable instruments, yet this court has never held, where they were indorsed

by a third party before delivery, in the absence of an agreement to that effect, that the rule recognized by the Indiana cases applied to them.

*Bogue* v. *Melick*, 25 Ill. 93, also referred to by counsel, is not in point. In that case the note was executed by the firm of Dorsett, Bro. & Co., of which firm Folsom Dorsett, the payee of the note, was a member. It was then indorsed in blank by Folsom Dorsett and Abr'm Melick. Under this state of facts it was said by the court: " Here the payee of the note is also one of the makers. It was impossible, therefore, that the defendant put his name upon the note for the security of the payee, which is indispensable to create a suretyship. All the parties knew that the note, while in the hands of the payee, was a mere nullity — without vitality — creating no right or liability whatever. It could never become an operative instrument except by the indorsement of the payee. He would then become the first indorser, and his name would precede that of the defendant."

In the present case, appellants are neither makers nor payees of the note. They are merely indorsers in blank before delivery.

Appellants' plea, verified by affidavit, imposed upon appellee the burden of proving the liability of the defendants in the capacity in which they are sued. We think these facts are sufficiently proved by the evidence in the record: 1st. That appellants' signatures on the back of the note are genuine. 2d. That they were placed there before the note was delivered. 3d. That there was no agreement between the parties, at or before the indorsement was made, as to what character of liability appellants thereby assumed. 4th. That the note did not, at any time, pass to either of the appellants by assignment, nor was either of them, at any time, the holder thereof.

The legal conclusion from these facts is, we think, clear. Commencing with *Cushman* v. *Dement,* 3 Scam. 497, and running through a series of cases down to, and including *Lincoln* v. *Hinsey,* 51 Ill. 435, this court has uniformly held that

where the name of a person, not a party to a note, is indorsed upon it before delivery, the presumption is, in the absence of evidence to the contrary, that he indorsed as guarantor, and the rule thus declared has been too long and too firmly adhered to, to be now changed, unless it shall be done by legislative enactment. In our opinion, the evidence before us utterly and entirely fails to show that the parties intended, by the indorsement, a liability other or different than that which the law would imply from the act under the circumstances.

We fail to appreciate the force of the argument of counsel, that although Pahlman may be considered as a guarantor, yet that the liability of Rush can only be that of a second indorser. Who, then, was the first indorser in this sense? No names are indorsed, save those of Pahlman and Rush, and so far as we have been able to discover, they occupy the same relation precisely to the note. The money borrowed by Welsh, for the payment of which the note was given, was ostensibly for the firm of Pahlman & Co., which firm was composed of Pahlman, Rush and Welsh. The interest of one was the interest of all, and this fact materially strengthens the legal presumption, if indeed any is needed, that the parties intended that appellants should be Welsh's sureties for the payment of the note.

It is contended, however, that whatever may have been the original liability of appellants, they are discharged from that liability by reason of a material alteration of the note by appellee after their indorsement, and without their knowledge or consent.

The special verdict finds that the words "Payable at 53 Lake street," in the note in evidence, were written by appellee after the appellants had indorsed the note, without their knowledge or authority, but with the knowledge and authority of Welsh, the maker of the note.

It is provided by the 139th section of the Practice Act (2 Gross, 289), that "when the special finding of facts is incon-

sistent with the general verdict, the former shall control the latter, and the court shall give judgment accordingly."

That the alteration was material, and, if done without the knowledge or consent of the guarantors, express or implied, it operates to discharge them, seems to be well settled by the authorities. Chitty on Bills, 203; 2 Pars. on Bills and Notes, 546, 547; *Woodworth* v. *Bank of America*, 19 Johns. 420; *Nazro* v. *Fuller*, 24 Wend. 374; *Southwark Bank* v. *Grosse*, 35 Penn. St. 82; *Chappel* v. *Spencer*, 23 Barb. 584; *Bank of Limestone* v. *Penick*, 5 T. B. Monr. 25.

It only remains, then, to determine whether the special finding of facts is, under the evidence, inconsistent with the general verdict.

Preliminary to an examination of the law and the evidence applicable to this branch of the case, it is well to note that express knowledge and express authority are questions of fact, but implied knowledge and implied authority are conclusions of law. The finding of the jury must, therefore, be understood to have reference only to express knowledge and express authority, and in that sense it was undoubtedly authorized by the evidence.

Although authority to make the alteration was not expressly given by appellants to appellee, yet if Welsh had implied authority for that purpose and gave his consent, it was sufficient.

Every partner possesses full and absolute authority to bind all the partners by his acts or contracts, in relation to the business of the firm, in the same manner and to the same extent as if he held full powers of attorney from all the members. Nor, as between the firm and other parties who deal with it in good faith, and without notice, is it a matter of any consequence whether the partner is acting fairly with his copartners in the particular transaction or not. If he is acting within the apparent scope of his authority, and professedly for the firm, his acts and representations are binding upon the firm in favor of an innocent third party, however grossly, in point of fact, he

may violate his duty towards his copartners. By holding him out to the world as a partner in the particular business, they authorize the world to deal with him as possessing all the powers of a partner. Parsons on Partnership, 95, 115, 172; Bigelow on Estoppel, 457.

It appears, from the evidence, that at the time the note was executed, appellants and Welsh, the maker of the note, were doing a partnership business under the firm name of H. J. Pahlman & Co., and were engaged in manufacturing alcohol, and building a distillery. It also appears that Welsh was the book-keeper, had charge of the bank account, and was in certain cases expressly authorized by appellants to fill up notes, under their individual indorsements, in blank, and sign the firm name to them. Pahlman swears: "Welsh was a partner of mine in June, 1870; at that time he had charge of the entire business; we were building a distillery, and I was not at the office a great deal, probably not at all; Mr. Welsh kept the books. Dr. Rush was also a partner of mine at that time; he and I were engaged in building the distillery. * * * Occasionally we had notes discounted at the bank, and placed to our credit, and the bank asked us to put our individual names on the back of the notes." Rush swears: "Sometime in the middle of June, some notes we had in bank became due, and others were substituted. They were the notes of H. J. Pahlman & Co., and the bank requested my individual indorsement before they were credited to H. J. Pahlman & Co., and I indorsed, in the month of June, several such notes in blank, to take the place of notes then matured in bank. Mr. Welsh at that time took care of the entire bank account of H. J. Pahlman & Co., and he was to fill up the notes. * * * The notes I indorsed in blank were to be filled up, and the firm name signed to them, as maker, by Mr. Welsh, and were to be made payable at the bank." Both parties, it is true, positively deny that they ever signed a note given by Welsh to appellee; yet Pahlman admits, in his testimony, speaking of the note in controversy: "My

signature is on the back; I can't tell positively how my signature came there. * * * My indorsement there must have been for some other purpose besides giving an indorsement for Mr. Welsh to Mr. Taylor. * * * This note must have been mixed with some other notes that were receiving our signatures at the time. That is the only way I can explain how my signature got there." Rush also admits, in his testimony, speaking of the note in controversy: " This is my signature; under . what circumstances it came there I do not know; I indorsed some papers for H. J. Pahlman & Co. at the North Western Railway office, just west of Kinzie street, in June, on two or three occasions."

We do not think it of much consequence in the determination of this case, whether appellants' signatures were placed on the note at the time and under the circumstance claimed by them, or whether they were placed there as claimed by appellee. In either event, Welsh was held out by them to the world as possessing sufficient authority to do precisely what he did. His power was apparently ample to borrow the money and give the note for its payment. The loan, to secure the payment of which the note was given, consisted of two bank checks, drawn by appellee, for $2,500 each, payable to the firm of H. J. Pahlman & Co., and which were promptly paid by the bank on which they were drawn. There was nothing in the transaction to show that it was not on account of the business of the firm. True, the note does not bind the parties as partners, but the partners are, nevertheless, all bound by the note. We do not conceive, under the circumstances, that the mere form by which they became bound for the payment of what was ostensibly their debt could change the apparent power of Welsh as a partner when dealing with a third party, without notice of bad faith on his part.

In borrowing the $5,000, and in filling up and delivering the note, Welsh was, at least, acting apparently as a partner of the appellants. His act, therefore, was their apparent act. The

power to borrow money and execute notes, or fill up notes under blank indorsements for its payment, necessarily includes the power to fix the amount, and the time and place of payment; and as the note is not perfect until it is delivered, the party thus empowered may do this at any time before delivery. Here, then, Welsh had the apparent power to bind appellants by any change in the terms of the note which might be reasonably necessary to effect the loan and to secure its payment. When, therefore, he assented to the addition of the words "payable at 53 Lake street," the assent was presumably not merely his individual assent, but that of each member of the firm.

It may be that Welsh acted in bad faith with his partners, and misapplied the money obtained from appellee. This is a risk they assumed in making him a partner, and intrusting him with the use of their blank indorsements. They held him out to the world as possessing sufficient authority to do all that he did, and as between them and third parties acting in good faith upon his apparent authority, they must suffer the loss.

We are unable to find any evidence in the record showing that appellee acted in bad faith in this transaction. He did not give his checks to Welsh individually, but to the firm. Moreover, at the same date that the note bears, it is also shown that he bought of Welsh one-third of his interest in the firm for the period of one year, which is evidenced by a written contract between him and Welsh, and the performance of Welsh's undertaking is guaranteed in writing by the appellants. Nothing appears which would have aroused the suspicion of a prudent man, that Welsh was exceeding his authority, or that he was distrusted by his copartners.

We perceive no error in the rulings of the court below, and its judgment is, therefore, affirmed.

*Judgment affirmed.*

A rehearing having been granted in the foregoing case, the following additional opinion was filed:

Per CURIAM: A rehearing was ordered in the present case,

for the purpose of reconsidering whether the special findings are so inconsistent with the general verdict that it should be set aside.

We have carefully reconsidered the question, and perceive no sufficient reason to depart from the conclusion expressed in the opinion.

The Supreme Court of Indiana, in *Rigeway* v. *Dearinger*, 42 Ind. 157, in construing a statute of that State, similar to the 51st section of the practice act of 1872, say : " If the special finding can, upon any hypothesis, be reconciled with the general verdict, the latter will control, and the court will not render judgment against the party who has the general verdict in his favor." Adopting this reasonable rule of construction, the general verdict is clearly sustainable upon the theory stated in the opinion. Inasmuch as the section under consideration has been repealed, we deem it unnecessary to add any thing further upon the question.

The judgment of the court below is affirmed.

*Judgment affirmed.*