## CHAUNCEY DAVIS, Impl'd, etc.

### v.

## LEVI BLACKWELL.

1. PARTNERSHIP—AUTHORITY OF PARTNER.—Every partner possesses full authority to bind all the partners by his acts and contracts in relation to the business of the firm. The authority to be implied from the partnership relation, however, is limited and restricted to partnership business.

2. ACTS NOT IN CONNECTION WITH FIRM BUSINESS—PRESUMPTION.— Where one deals with a partner in a matter not within the scope of the partnership business, the law will intend that he deals with him in his private and individual capacity, and an engagement by one partner to bind the firm in a matter not within the partnership business, must be based upon some authority, express or implied, beyond that resulting from the partnership relation, or there must be a subsequent adoption or ratification of the act by the other partners.

3. GUARANTY OF NOTE BY FIRM.—A partner cannot by virtue of his implied authority, bind his firm as guarantors of commercial paper not given in the course of the partnership business.

4. INDIVIDUAL NOTE OF PARTNER WITH GUARANTY OF THE FIRM.— Where a note is executed as the individual note of one of the partners and the guaranty of the firm is indorsed thereon, it is *prima facie* evidence of an individual debt, of a loan to him and not to the firm, and is sufficient to put the holder of the note upon inquiry of the true state of facts, and is notice to such holder of every fact to which such inquiry would naturally lead.

5. BURDEN OF PROOF.—The presumption arising from the form of the note and guaranty not only throws the burden of proof upon the party seeking to enforce payment of the note, to show that it was in fact a partnership transaction, but constitutes of itself affirmative proof for the defendant of no little significance.

APPEAL from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding. Opinion filed January 7, 1880.

Davis v. Blackwell.

Messrs. MILLER & FROST and Mr. W. C. GOUDY, for appellant; that one partner can bind the firm only in the name of the partnership, cited Kirk v. Bluston, 9 Mees. & W. 283; Faith v. Richmond, 11 Adol. & E. 339; Clark v. Houghton, 12 Gray, 38; 1 Am. Lead. Cas. 551.

If a partner borrows money in his own name, and applies it to partnership purposes, it is not a partnership debt: 1 Parsons on Con. 181; Jaques v. Marquand, 6 Cow. 497; Logan v. Bond, 13 Ga. 192; In re Warren, Davis, 320; Farmers Bank v. Bayles, 35 Mo. 42; Foster v. Hall, 4 Humph. 346; Graff v. Hitchman, 5 Watts, 454; Nevan v. Lewis, 1 Simons, 377; Emily v. Lye, 15 East. 6; Conley v. Good, Breese, 135; White v. Gibson, 11 Ind. 282; Scott v. Colmsville, 7 J. J. Marsh, 416; Uhler v. Browning, 4 Dutch. 79; Nat. Bank v. Thomas, 47 N. Y. 15; Clay v. Kelttenell, 18 Pa. St. 408; Tompkins v. Woodyard, 5 W. Va. 216; Siffkin v. Walker, 2 Camp. 308; Green v. Sammer, 8 Met. 411; Ripley v. Kingsbury, 1 Day, 15; Ex parte Hunter, 1 Atk. 223; Parker v. Caruthers, 3 Esp. 200; Leroy v. Johnson, 2 Pet. 192; Willis v. Hall, 2 Dev. & Bat. 231; North Pa. Coal Co.'s Appeal, 45 Pa. St. 185; Story on Partnership, § 134; Smith v. Hoffman, 2 Cranch. C. C. R. 651; Bailey v. Clark, 6 Pick, 652.

A firm guaranty executed by one partner in matters outside the partnership business, will not bind the firm: Sutton v. Irwine, 12 S. & R. 13; 4 Esp. 208; 3 Camp. 209; Hamil v. Perkins, 2 P. & W. 177; First Nat. Bank v. Carpenter, 41 Iowa, 518; Collyer on Partnership, 704.

The burden of proving the authority of the partner or consent of the other partners, is upon the holder of the note: Foot v. Sabin, 19 Johns. 154; Boyd v. Plumb, 7 Wend. 309; Langan v. Hewett, 21 Miss. 122; Marsh v. Tompkins Nat. Bank, 2 Bradwell, 217.

The writing expresses the contract as intended by the parties, and it cannot be varied by parol: Uhler v. Browning, 4 Dutch, 79.

Where there is anything in the transaction to lead the holder of the note to believe the money is not for the use of the firm, or is used in business foreign to the firm, it will not be liable:

Collyer on Partnership, 678; Miller v. Manire, 6 Hill, 119; Wagner v. Frescht, 56 N. H. 495; Boyd v. Plumb, 7 Wend. 309; Rollins v. Stevens, 31 Me. 454; Darling v. March, 22 Me. 188; Marsh v. Thompson Nat. Bank, 2 Bradwell, 217.

As to notice: 13 Ves. 120; Mad. Ch. 327; Reider v. Bass, 4 Ohio, 478; N. Y. Fire Ins. Co. v. Bennet, 5 Conn.

An admission of a party not against his interest is not admissible in evidence: Ostram v. Jacobs, 9 Met. 454; Thorn v. Smith, 21 Wend, 365; Lazarus v. Long, 3 Ind. 39; Uhler v. Browning, 4 Dutch, 79; White v. Gibson, 11 Ind. 283.

The law does not imply an authority on the part of a partner to bind the firm by a guaranty: Tompkins v. Woodyard, 5 W. Va. 216; Foot v. Sabin, 19 Johns. 154; Boyd v. Plum, 7 Wend. 309; Langan v. Hewett, 21 Miss. 122; First Nat. Bank v. Carpenter, 41 Iowa, 518; Hammal v. Perkins, 2 P. &. W. 137; Sutton v. Erwin, 12 S. & R. 13; Marsh v. Thompson Nat. Bank, 2 Bradwell, 217.

The legal effect of an indorser's liability cannot be changed by parol: Mason v. Burton, 54 Ill. 350; Howe v. Merrill, 5 Cush. 82; Campbell v. Robins, 29 Ind. 27; 10 Mass. 277; 11 Mass. 54.

Messrs. LEAMING & THOMPSON, for appellee; as to the authority of a partner to bind the firm as makers or indorsers of promissory notes, cited Story on Promissory Notes, § 72; Story on Partnership, § 102; N. Y. Fire Ins. Co. v. Bennett, 5 Conn. 575; Pahlman v. Taylor, 75 Ill. 629; Winship v. Bank of U. S. 5 Pet. 529.

If acting within the apparent scope of his authority, and professedly for the firm, his acts and representations are, as to innocent third parties, binding upon the firm: Pahlman v. Taylor, 75 Ill. 629; Stockwell v. Dillingham, 50 Me. 442; Story on Partnership, § 105.

The obligation of all the members of a firm does not depend upon the form of the obligation, whether as maker, indorser or drawer: Langan v. Hewett, 21 Miss. 122; Folk v. Wilson, 21 Md. 538; Boyd v. Plumb, 7 Wend. 311; Stockwell v. Dillingham, 50 Me. 442; Laverty v. Burr, 1 Wend. 529; *In re* Warren, Davis, 322.

Davis v. Blackwell.

The presumption raised by the form of the note may be rebutted by evidence *aliunde:* Emily v. Lye, 15 East, 6; Farmer's Bank v. Bayles, 35 Mo. 322; *In re* Warren, Davis, 322.

Bailey, P. J.   This was an action of assumpsit, brought by Levi Blackwell against Chauncey Davis and Albert D. Loomis, upon their guaranty of the following promissory note :

" $10,000.                        Chicago, November 23, 1870.

" One year after date, I promise to pay to the order of Levi Blackwell, ten thousand dollars, with interest at ten per cent., payable semi-annually, value received.

"Albert D. Loomis."

On the back of said note there appeared written the following :

" For value received, we guarantee the payment of the within note and interest at maturity.

" Loomis & Davis."

Personal service was had on both the defendants, and Loomis failing to defend, was defaulted.   Davis appeared and filed a plea of non-assumpsit, and also a plea denying the execution by him of the guaranty, both pleas being verified by affidavit; and on trial in the court below without a jury, the issues were found for the plaintiff, and judgment entered in his favor for $12,656.65 and costs.   To reverse this judgment, defendant Davis has appealed to this court.

At the time the note in question was given, Davis and Loomis were co-partners in the business of manufacturing lumber, at Muskegon, Michigan, and selling the same in Chicago.   The business at Muskegon was conducted under the firm name of C. Davis & Co., and at Chicago under that of Loomis & Davis. Davis, who resided at Muskegon, was the managing partner at that place, and superintended the manufacture of lumber for the firm; and Loomis, who resided at Chicago, was the managing partner there, and had charge of selling the lumber.   The firm was organized in April, 1863, and its affairs were conducted in the manner above indicated until the latter part of October, 1876, when Davis took charge of the entire business, and

kept the same under his control until June 9, 1877, at which time the firm was dissolved.

The evidence shows that said note and guaranty were executed by said Loomis to the plaintiff to secure a loan made by the latter on the day of the date of said note for the sum of $10,000. The defense introduced by Davis is that Loomis had no authority to make said guaranty in the name of his firm, and that the firm is not bound thereby.

The evidence shows that the transaction took place at Chicago; that the business of negotiating the loan was conducted by Loomis in person, and that he personally received the money and gave therefor his individual note, indorsing thereon the firm guaranty. Davis at the time was in Michigan, attending to the affairs of the firm there, and had no personal connection with the matter, and was, as he claims, entirely ignorant of the fact that such loan was obtained and such note and guaranty given therefor, not only at the time of the transaction, but for nearly six years thereafter.

The liability of the firm upon the guaranty depends mainly upon whether said money was in fact borrowed by said Loomis on his own individual account, or on account of the firm; and upon this question the principal controversy in the case turns. It is insisted by the plaintiff that the money was really loaned to and upon the credit of the firm, and that the individual note of the partner guaranteed by the firm, was merely the form adopted by the parties for securing a firm indebtedness. On the part of the defendant, however, it is claimed that the money was in fact loaned to Loomis individually, and used by him for purposes outside the firm business, and that the guaranty was an attempt on his part to make his firm liable for his individual debt.

The general rules of law applicable to this subject are well understood. It is a principle universally recognized that every partner possesses full authority to bind all the partners by his acts and contracts in relation to the business of the firm, in the same manner and to the same extent as if he had full powers of attorney from them. Parsons on Cont. 99; Pahlman et al. v. Taylor, 75 Ill. 629. The authority to be implied from the part-

Davis v. Blackwell.

·nership relation, however, is limited and restricted to the partnership business. To that extent only is a partner considered the lawful agent of the firm; for the law will intend that where one deals with a partner in a matter not within the scope of the partnership, he deals with him in his private and individual capacity. Accordingly an engagement by one partner to bind the firm in a transaction unconnected with and not within the purview of its business, is, as to the other partners, presumptively fraudulent and void. Such engagement, in order to be binding, must be based on some authority, express or implied, beyond that resulting from the partnership relation, or be subsequently adopted or ratified by the other partners. Rogers v. Batchelor, 12 Pet. 221; Hamill v. Purvis, 2 Pen. & W. 177; Nichols v. Hughs, 2 Bailey, 109; Thomas v. Harding, 8 Greenl. 417; Tompkins v. Woodyard, 5 W. Va. 216; Livingston v. Roosevelt, 4 John. 251. It follows that a partner cannot by virtue of his implied authority, bind his firm as guarantors of commercial paper not given in the course of the partnership dealings. Marsh v. Thompson National Bank, 2 Bradwell, 217.

It may be observed that the present case is not embarrassed by any consideration of the rights of a *bona fide* indorsee of commercial paper. Doubtless where such paper bearing a firm guaranty, apparently within the scope and objects of the firm business, comes into the hands of an innocent holder, the firm will be bound, although the guaranty may have been given for a purpose wholly foreign to the objects of the partnership. But where the holder has notice, either from what appears upon the face of the paper or otherwise, that the consideration of the guaranty was beyond the scope of the partnership business, the firm cannot be holden without proof of a precedent authority or subsequent ratification of the other partners.

The guaranty in this case was written upon the individual note of Loomis. *Prima facie*, at least, the debt evidenced by the note was Loomis' individual debt. The loan thus secured was presumptively a loan to him and not to the firm. Such *prima facie* presumption was of itself, independently of the plaintiff's personal participation in the transaction, sufficient

Davis v. Blackwell.

to put him upon inquiry, and is notice to him of every fact to which such inquiry would naturally lead. We are brought then to the question as to whether the loan was in fact an individual or a firm transaction.

Appellant insists that the form of the note is not only *prima facie* but conclusive evidence that the loan was to Loomis. To this view we are unable to yield our assent. Numerous authorities are cited by counsel to show that where money is borrowed or goods bought, or any other contract made by one partner upon his own exclusive credit, he alone is liable therefor, and that the partnership will not be liable, although the money, property or contract is for their proper use and benefit, or is applied thereto. The theory of those authorities is, that the creditor, by accepting the separate security of the individual partner, is supposed to have elected to take that in preference to the security of the firm. None of the cases cited however seem to go to the extent of holding that where the creditor, as in the case at bar, exacts the security of both the individual partner and the firm, the partner alone is to be held liable.

It is true, if the rights of the parties in the present case are to be determined solely by an inspection of the security itself, without resort to extrinsic evidence, the firm cannot be held, since the note upon its face appears to represent an individual debt of Loomis, and no authority to use the firm name to guarantee his individual debt can be presumed. But we see no reason why the real nature of the transaction may not be shown. Such proof is not obnoxious to the objection that it tends to contradict or vary the note, as defendant's counsel insist. The note is a mere promise by Loomis to pay the plaintiff the money therein mentioned at the time therein specified, for value received. None of the terms are in the least affected by such evidence. The rights of the plaintiff and the liabilities of Loomis arising upon the note itself, remain wholly unchanged. Such proof serves, it is true, to ascertain and determine the real consideration of the note, and has doubtless the effect to modify those presumptions which are based upon the nature of such consideration, but as the note recites the consideration merely

Davis v. Blackwell.

as "value received," no recital of the note in relation thereto is contradicted. The rule unquestionably is, that prior and contemporaneous conversations and negotiations are deemed to be merged in the written contract, yet it is always permissible to interpret the contract in the light of surrounding circumstances and of the actual transactions between the parties. Especially is this the case where the plaintiff is seeking to enforce, not the contract itself, but liabilities outside and merely collateral thereto.

If it were admitted that the note and guaranty in question were in fact given in a partnership transaction, and that the money obtained therefor was really borrowed of the plaintiff by the firm and appropriated to its business, the form of the paper which Loomis saw fit to execute on behalf of his firm as security for the loan cannot be material. He had power to put the firm name to a promissory note as maker, and we see no reason why, if he chose to give the firm the benefit of his individual credit by executing his own note as primary security for the loan, he had not the same power to bind his firm by executing in its name a guaranty of such note.

*In re* Warren, 2 Ware, 322, the court, after admitting the general rule above stated, that where one member of a firm makes his separate note in his own name, he alone and not the firm will be bound, says : "The presumptions that arise from the form of the security, that the separate name of the partner was taken from choice, may be overcome by proof that no such election was made. The true and more general principle seems to be, that when the intention of the contracting parties is that the firm shall be bound, and the contract is within the scope of the partnership business, the contract will bind the firm in whatever form it may be made." See, also, Boyd v. Plumb, 7 Wend. 309; Langan et al. v. Hewett, 21 Miss. 125; Filk et al. v. Wilson, 21 Md. 538.

On the trial below, both parties gave evidence of the circumstances of the loan and of the execution of the note and guaranty therefor, and as we view the case, our decision must turn upon the mere questions of fact thereby presented. If the evidence warrants the conclusion that the loan was in fact made

by the plaintiff to and on account of the firm, or that the guaranty was subsequently adopted or ratified by Davis, the decision of the court below should be sustained. If, on the other hand, the proper conclusion to be drawn from the evidence is that the loan was made to Loomis individually, and that it was really his individual transaction, and that no subsequent adoption or ratification of the guaranty by Davis is shown, the judgment must be reversed, as being contrary to the evidence.

It should be observed that upon these issues of fact the burden of proof is upon the plaintiff. This results from the denial by Davis under oath of the execution of the guaranty; and it may be further remarked that the presumption arising from the form of the note and guaranty not only throws the burden of proof upon the plaintiff, but constitutes of itself affirmative proof for the defendant of no little significance. If the loan was in fact to the firm, it is difficult to discover any reason, either growing out of the usual course of the co-partnership business as disclosed by the evidence, or otherwise, for the execution by Loomis of his individual note, instead of giving the note of the firm. It does not appear that the plaintiff required or even suggested this form of security. The firm note would doubtless have been equally satisfactory to him, and would have been more favorable to Loomis. In the absence of all explanatory evidence, it is fair to assume that the written contracts between parties correctly record their actual transactions.

But not only did Loomis give his individual note, but we think the fair inference from the evidence is that he used all the money borrowed of the plaintiff for his individual purposes. It appears that at and for some time prior to the date of this loan, and from thence up to the dissolution of said firm, one Dore was extensively engaged in getting out and selling railroad ties, and that during a portion or all of that time said Loomis was interested with him in that business either as partner or otherwise. In the prosecution of said business, Dore, or Loomis & Dore, kept a running money account with Loomis & Davis, whereby the latter firm acted in a certain sense as the bankers of the former. Any surplus moneys in

Davis v. Blackwell.

the hands of Loomis & Dore were deposited with Loomis & Davis, and drafts were made upon the latter firm as money was needed in the tie business. The account in the books of Loomis & Davis in which these transactions appeared was called the " tie account."

The money borrowed of the plaintiff was in the form of a bank check, drawn by one Paul Cornell, payable to the order of the plaintiff, and by the latter indorsed in blank. This check was delivered to Loomis, and was by him deposited in bank to the credit of Loomis & Davis. No entry was made on the books of Loomis & Davis of the proceeds of the loan, but a ticket representing the amount was placed in a drawer, and when any of said money was appropriated to any purpose, the amount so appropriated was subtracted from the amount of the ticket. On the day of the date of the loan, the tie account appears credited with the sum of $4,500 " cash borrowed from Loomis & Dore," and two days later a similar credit of $2,500 appears in said account. The same amounts were deducted at the same dates from the ticket, and the testimony of the book-keeper of Loomis & Davis shows that these credits in the tie account were in fact an appropriation of $7,000 of the money borrowed of the plaintiff, to the use of the firm of Loomis & Dore. After these credits were made, said sum of $7,000 was used by Loomis & Davis in payment of their indebtedness; but it would seem to have become the money of that firm, not by virtue of the loan from the plaintiff, but as a loan or deposit from Loomis & Dore. The remaining $3,000 does not appear to have been entered upon the books of Loomis & Davis in any form, but was drawn out of the bank in different sums by Loomis, the last check which closed the account being for the sum of $58.40, bearing date February 7, 1871. These circumstances are all inconsistent with the theory that the loan was a firm transaction, and seem to be quite in harmony with the supposition that Loomis borrowed the money on his own account, partly for his own use, and partly for the accommodation of Loomis & Dore.

It is true, if the loan was really made to the firm, such fact could not have been affected by any subsequent misappropria-

tion of the money by Loomis; but in the absence of evidence showing satisfactorily and clearly what the transaction really was, the appropriation of the money actually made by Loomis is a circumstance of very great weight in determining that question.

The only direct evidence as to the transaction itself is found in the testimony of Henry M. Blackwell, a son of the plaintiff. He at the time was employed as a clerk in the office of Loomis & Davis, and acted on behalf of his father in negotiating the loan with Loomis. His account of the matter is very unsatisfactory and in many respects self-contradictory, and much of his evidence seems to be a statement of the conclusions of witnesses rather than a narration of the facts as they occurred. In some of his answers he says the loan was made to the firm, and in others that it was made to Loomis, but he entirely fails to detail either acts or words immediately connected with the loan, from which it can be determined to whom it was in fact made. The only conversation he relates seems to have taken place some four or five weeks before the loan was consummated. At that time he says Loomis made application to him for some money the witness' father was about to get, and said the firm wanted to borrow it. Whether the loan was made in pursuance of that application or of some entirely different arrangements, does not appear. The statements of a letter written by Loomis to Davis only two days after the loan was made seem to indicate that the arrangement originally contemplated was not carried out. The witness is also somewhat discredited by evidence of former statements made by him, to the effect that the loan was made to Loomis, and he was doubtful about the firm being held liable upon their guaranty.

John D. Blackwell, another son of the plaintiff, testifies to a conversation with Loomis prior to the making of the loan, in which the latter said that the firm wanted to borrow his father's money if he could make proper arrangements with him, and that the firm would pay him a fair interest for it. How long prior to the loan this conversation occurred does not appear. He also testifies to a conversation with Loomis about a week after the loan, in which Loomis said that he was glad the thing

Davis v. Blackwell.

was settled; that witness' father would feel easier about the matter, and that Loomis & Davis would pay the money any day he asked for it.

The evidence of the last conversation was received against the objection and exception of the defendant, and we think it at least doubtful whether it was admissible as against Davis, for the purpose of showing that the loan was a firm rather than an individual transaction. But apart from this, these two conversations between this witness and Loomis are not necessarily inconsistent with the theory that the loan was made to Loomis individually. The loan may not have been made in pursuance of the arrangement proposed in the first conversation, and the promise of payment by Loomis & Davis in the second conversation may have had reference only to the meeting by the firm of their liability as guarantors. At any rate, neither the testimony of this witness, nor that of his brother Henry, furnishes such clear and satisfactory evidence that the loan was a firm transaction as can have the effect to overcome the strong presumptions to the contrary arising from the fact that Loomis gave his individual note therefore and applied the money borrowed to purposes foreign to the firm business.

It is a circumstance, at least worthy of remark, that Loomis, who is necessarily acquainted with all the facts involved in this controversy, was not called as a witness, and no reason was shown why his testimony could not be procured. We feel more strongly disinclined to sustain a judgment based upon evidence so unsatisfactory and inconclusive when there is apparently within the reach of the parties, evidence which, if adduced, would in all probability settle every doubt.

Considerable evidence was introduced by the plaintiff for the purpose of showing an adoption or subsequent ratification by Davis of the guaranty. In the absence of circumstances out of which an equitable estoppel may arise—and no such are shown in this case—an adoption or ratification of an unauthorized act of an agent in order to be binding, must be shown to have been made with full knowledge of the act itself, and of all material facts connected therewith. It does not appear that Davis had any knowledge of the execution of the guaranty at

all until some time in February or March, 1876, nearly six years after its date. At about that time some intimations of the true state of the case seems to have reached him, and he thereupon wrote to his partner for an explanation of the matter, but does not appear to have obtained the desired information. In the latter part of October following, he came to Chicago, and took into his own hands the control of that branch of the co-partnership business, and immediately commenced negotiations with Loomis for a dissolution. At that time the tie account, as it appeared upon the firm books, showed an indebtedness from the firm to the owners of that account of about $5,500, and Davis, in order to obtain an agreement with Loomis for a dissolution, consented that whatever was found due on that account should be paid on the plaintiff's note. Shortly after this Henry M. Blackwell, the plaintiff's son, applied to Davis on behalf of his father, for the sum of one hundred dollars. Davis at the time had not ascertained the true state of the tie account, and supposing the firm was owing said account a considerable sum, paid said $100, and had the same charged to said account. This $100 was indorsed by the plaintiff on his note, and such payment is now claimed to be a ratification of the liability of the firm on the guaranty.

We are unable to perceive how such effect can be given to this payment. The agreement to allow the amount due on the tie account to be paid on the plaintiff's note was entirely consistent with the theory of the defense that the note represented an individual debt of Loomis. It was proper, upon that theory, to apply the avails of the tie account, of which Loomis was a part owner, and in which the firm had no interest, to the payment of the note. It is of no importance, so far as this question is concerned, that upon a subsequent investigation of the tie account it turned out that no balance was due the firm thereon. The payment by Davis of the $100 was upon the supposition that at least that amount was due, and so long as he was ignorant of the true state of the case, he cannot be held to have affirmed his own liability to the plaintiff by making the payment.

After considering the entire record, we are of the opinion

that the judgment is so clearly against the weight of evidence that the ends of justice will be promoted by awarding a new trial. The judgment will accordingly be reversed and the cause remanded.

Judgment reversed.