SAMUEL C. WILEY, IMP'D, ETC.,

v.

NORMAN C. THOMPSON.

| 23 | 199 |
| 59 | 170 |
| 23 | 199 |
| 66 | 451 |

*Partnership—Scope of—Notice—Estoppel—Evidence.*

1. A partner has authority to bind the firm only within the scope of the business of the co-partnership.

2. In a controversy between a third person and the firm, or one of its members, where such person has dealt in good faith and without notice with one of the partners who assumed to contract for and in the name of the firm, the question involved is the apparent scope of the partnership business, and that depends upon the character of the business actually and publicly done by the firm.

3. All of the partners are held to have such knowledge and notice of the acts of any of their co-partners relative to their business as in the discharge of their plain duty they might or ought to have obtained.

4. In the case presented, it is *held:* That one of the partners who was

not himself actively engaged in the business, was bound to know that the firm was engaged as general dealers in farm impl··ments; that he is estopped from denying that the transaction, in which the notes in question were given, was a partnership matter; and that the evidence offered, tending to show that said transaction was not within the scope of the partnership business, was properly excluded.

[Opinion filed June 9, 1887.]

APPEAL from the Circuit Court · of La Salle County; the Hon. CHARLES BLANCHARD, Judge, presiding.

Messrs. RICHOLSON & GENTLEMAN, J. W. DUNCAN and H. T. GILBERT, for appellant.

The only question presented upon the record, as it now stands, is whether the unlimited purchase of manufactured articles is conclusively presumed to be within the scope of a partnership business formed for manufacturing purposes only. It may be that there is some evidence in the record which might be submitted to a jury upon the question whether there was any conduct on the part of William Wilson's co-partners which might estop them from questioning his power to make the contracts in question in this case. But it must be borne in mind that no such question was raised or presented in the court below; but, on the contrary, the court, by its rulings, withdrew that question from the consideration of the jury, and decided the case solely upon the point that the contracts were in fact within the scope of the co-partnership business, and upon the correctness of that ruling alone must depend the validity of the judgment.

Mr. D. B. SNOW, for appellee.

BAKER, P. J.  In this action of assumpsit on two promissory notes, the appellant Wiley, interposed the general issue, a personal plea denying the execution of the notes and a like plea denying their execution by the firm of O. J. Wilson & Company.

The verdict and judgment were against him in the Circuit

Wiley v. Thompson.

Court and he prosecuted this appeal. The facts shown at the trial may be briefly stated.

On the 7th day of August, 1879, Osman J. Wilson and Samuel C. Wiley purchased a portion of the property of the Earlville Manufacturing Company, then in the hands of a receiver, and formed a co-partnership under the firm name of O. J. Wilson & Company for the purpose of carrying on the business of blacksmithing and repairing, and also of finishing wagons and buggies and making harrows and cultivators. All three of the partners lived at Earlville. The general management of the business was placed in the hands of William Wilson, and the other partners gave no personal attention to the operations of the firm. For the first few years and until early in 1883, the only articles sold were such as had been finished or made by themselves. About that time agricultural implements manufactured by other parties were placed on the premises and sold on commission, and as early as March 7th of that year, there was a general stock of farming implements on hand and being sold. William Wilson, assuming to act in behalf of the firm, made purchases of such implements. The articles of other make, purchased as well as on commission, and those manufactured by the firm, were kept together in a building adjoining the wagon and blacksmithing shop and on the platforms in front of the buildings; and the sales were made by William Wilson and by one John M. Hillier, who had charge of the factory and shops of the firm. Said Hillier, by direction of William Wilson, also made purchases of agricultural implements in the name of the firm. Printed letter-heads used in conducting the business of the firm read as follows: " Office of O. J. Wilson & Company, Manufacturers of Buggies, Carriages, and Road Carts. Repairing and Repainting. Horseshoeing a Specialty. Dealers in Farm Implements of all Kinds. Deering and McCormick Twine Binders, Mowers, etc."

Two written contracts were made, purporting to be between Norman C. Thompson, appellee, and the firm of O. J. Wilson & Company, for the sale by the former to the latter of farming implements, the first dated March 7, 1883, and the other

dated January 25, 1884, and the firm name was signed to the one by William Wilson, and to the other by Hillier, under express directions from William Wilson.

Under these contracts Thompson sold and delivered various manufactured implements for farm use, and promissory notes signed by William Wilson in the firm name were given for the purchase money.

Payments were afterward made on these notes by the firm, through the managing partner, and renewal notes given by him in the firm name for the balance due thereon, and the two notes in suit are such renewal notes.

Osman J. Wilson, one of the partners, was present when the first contract was made, and was introduced to one Jackson, the traveling salesman of appellee, as the senior member of the firm of O. J. Wilson & Company, and participated in the conversation which resulted in the making of said contract. Neither appellee nor Jackson, his agent, either knew or saw or had any communication with Wiley, the appellant. The latter came home to Earlville after an absence, in the spring of 1883, and saw agricultural implements, not of the manufacture of his own firm, lying around the premises, mostly on the platforms in front of the buildings. Some of the goods sold by appellee were still on hand at the time the firm became insolvent and the receiver took possession of their assets.

Various offers of testimony were made by appellant upon the trial, to which the Circuit Court sustained objections. The propriety of the action of the court in refusing to permit such testimony to go to the jury, is the principal issue in the contention at bar. Appellant offered to prove that, after the co-partnership had been formed for the purpose of manufacturing only, and as incident thereto, selling articles made by the firm, there was no subsequent agreement made by the partners whereby the scope of the partnership should be extended to include the purchase and sale of implements manufactured by other parties. He also offered to prove that at the time he first became aware such latter articles were kept on the premises for sale, he objected to the firm engaging in the

Wiley v. Thompson.

business of handling them, and was informed by William Wilson that they had not been purchased for the firm, but that he, said Wilson, was handling them individually on commission; and that thereupon the other members of the co-partnership agreed that William Wilson be given permission to keep agricultural implements of other manufacture about the premises for sale on commission, but with the understanding that no responsibility of any kind should attach to the firm. He also offered to prove that it was agreed between him and William Wilson that no implements not manufactured in their own shops should enter into the business of the firm, except those sold on commission; and that William Wilson, in making absolute purchases of such articles, acted without the knowledge or consent of appellant.

He also offered to show that brothers of William Wilson, who were not in the employment of the firm, assisted in making sales of such implements, and in the management of the business connected therewith.

The rule of the law is, that one partner has authority to bind the firm only within the scope of the business of the co-partnership. In controversies between members of the same firm, and where the question turns upon their respective rights and liabilities *inter se*, and it becomes necessary to ascertain the scope of the business engaged in, the *actual* and *real* scope of the business is the matter to be determined, and that will usually depend upon their contract between themselves. But, where the litigation is between another person and the firm, or one of its members, and such person has dealt in good faith and without notice with one of the partners who assumed to contract for and in the name of the firm, then the salient point for ascertainment is the *apparent* scope of the co-partnership business, and that will depend upon the character of the business actually and publicly done by the firm.

In section 168a of Story on Partnership it is said :

" In respect to what acts of one partner the others will, and ought to be held to have notice, so as to bind them all by implied consent or acquiescence, it may be laid down as a gen-

eral rule for the protection of those who deal with partners, that all of the partners have such knowledge and notice of the acts of any of their partners relative to their business, as in discharge of their plain duty they might or ought to have obtained." When the business of a partnership is defined, known or declared, or if the public have the usual means of knowledge given them, and if, in either of the cases stated, the firm does not appear to the world in any other light than the one exhibited, and if no acts have been done or suffered by the partnership to mislead them, every person is presumed to know the extent of the partnership with whose members he deals. 3 Kent's Com. 43. But if partners either knowingly, or by their own conduct and acts and a neglect of the plain duty they owe to others, permit the firm business to be so conducted as to deceive the public and mislead another to his detriment while dealing in good faith and without notice, with one of the partners, touching the scope of the partnership business and the authority of such partner to bind the firm when assuming to act in the co-partnership name, then their implied consent to the transaction involved will be conclusively presumed. It would seem that the same principle must, in reason and on grounds of public policy, apply in such case that is applicable to the cases where one suffers himself to be held out as a partner, and there the law will not allow him to deny the relation, even though no partnership in fact exists. 5 Wait's Actions and Defenses, Chap. 106 ; Fisher v. Bowles, 20 Ill. 396 ; Pahlman v. Taylor, 75 Ill. 629.

Under the circumstances of the case before us, appellant was required to know that the firm of O. J. Wilson & Company, of which he was a member, was engaged in the business of general dealers in farm implements of all kinds. A business of that kind was publicly and notoriously carried on for nearly two years in the very village in which he lived, in the name of the firm of which he was a member and upon the premises in which it did business.

The goods purchased were intermingled with those manufactured by the firm itself, and the two classes of articles were sold indiscriminately by the managing partner and by the

Wiley v. Thompson.

superintendent of the firm's factory, and for the benefit of the firm. The letter heads were a public advertisement of the character of the business done by the firm. As early as the spring of 1883 appellant was advised that agricultural implements manufactured by and procured from other parties were being kept and sold on the premises, and he did not either take steps to put a stop to such business or to see that it was so carried on and conducted as that others would not be misled and defrauded by the apparent scope thus given to the business of the co-partnership. He should now be estopped from denying the transaction with appellee was a partnership transaction.

There was no error in refusing the proffered testimony. The conversations, agreements and arrangements in 1883, between members of the firm of O. J. Wilson & Company, concerning the partnership business, were not competent evidence against appellee. Private arrangements among partners are not binding upon third parties who have no notice of them; and in this case any intention to bring home notice to appellee was expressly disclaimed. It was wholly immaterial, in respect to the rights of appellee, without he had notice, whether or not there was a subsequent agreement between the partners to extend the scope of the partnership business. The important point is, was the business in fact extended and under circumstances such as to preclude appellant from claiming that the business done there in 1883 and 1884, in the firm name, was not partnership business?

It is very evident that it is immaterial in this controversy whether or not the managing member of the firm induced brothers of his, who were not in the employment of the firm, to assist in making sales of agricultural implements and in the management of the business connected therewith. No offer of evidence on the part of the appellant would have been competent except that tending to show that the indebtedness sued on was not incurred within the apparent scope of the partnership business, or actual notice it was not within its terms.

It is useless to examine the objections urged to the instruc-

tions of the court. In any event they worked no injury, for under the evidence the jury could not have found a different verdict from that which they returned. The judgment is just, and it is affirmed.

*Judgment affirmed.*