· C. C. Huthmacher, Sheriff, etc., for the use of Simon Levy et al., v. Lowman's Sons et al.

1. RESCISSION OF CONTRACT—*False Statements—Fraud.*—Where a vendee in negotiating a purchase of goods, makes designedly false answers to questions put to him by the vendor concerning his means, and what he had bought or was intending to buy of others, and thereby obtains credit, the vendor may, upon discovery of the fraud, rescind the sale and replevy his goods.

2. REPLEVIN—*Of Goods Obtained by Fraud.*—Where a vendee of goods, fraudulently obtained from a vendor, sold the same to persons who had knowledge of the fraud, the vendor, upon rescinding the sale, may recover his goods from such persons in an action of replevin.

4. FRAUD—*Liability of Partners.*—Where a partnership purchased a stock of goods from a person who had fraudulently obtained them upon credit of another, and one of the partners had knowledge of such fraud, *it was held* that the knowledge of such partner was binding upon the partnership.

4. SAME—*Obtaining Goods with the Intention of Not Paying for Them.*—The fact of a person buying goods with the intention of never paying for them, of itself amounts to such a fraud as will authorize the seller to rescind the contract of sale and reclaim the goods.

5. SAME—*May be Inferred from Circumstances.*—Fraud and guilty knowledge may be proved by circumstances from which the inference is natural and irresistible.

6. SAME—*Evidence of a Common Purpose.*—Other acts of fraud are admissible in evidence, to prove the fraudulent acts charged, where the evidence shows that the two acts were committed in pursuance of a common purpose to defraud. Proof of fraud is not limited to direct evidence.

7. EVIDENCE—*Competent for one Purpose, Admissible Generally.*—If evidence is competent for one purpose it must be admitted for that purpose regardless of its inapplicability to other parts of the case.

8. APPELLATE COURT PRACTICE—*Error in Admitting Testimony.*—The contention that the trial court erred in the admission of testimony

Huthmacher v. Lowman's Sons.

can not be considered where no exception to the action of the court has been preserved in the bill of exceptions.

**Debt**, on a replevin bond. Appeal from the Circuit Court of Jackson County; the Hon. ALONZO K. VICKERS, Judge, presiding. Heard in this court at the February term, 1893. Affirmed. Opinion filed September 5, 1896.

R. J. STEPHENS, R. J. McELVAIN, and J. M. HERBERT, attorneys for appellant.

When the issue is as to whether or not goods were obtained by false and fraudulent representations, or acts, evidence as to alleged false and fraudulent representations to other parties than the vendor in the particular case, or of alleged fraudulent acts in other transactions can not be admitted unless shown to be parts of one and the same general scheme of fraud. Simpkins v. Berggren, 2 Ill. App. 101; Johnston v. Beeney, 5 Ill. App. 601; Hanchett v. Riverdale Distillery Co., 15 Ib. 57; Henderson v. Miller, 36 Ill. App. 233; Matthews v. Reinhardt, 149 Ill. 635.

HILL & MARTIN, attorneys for appellees.

A purchase of property made with the intent not to pay for it is fraudulent as between the buyer and seller and no title passes to the buyer; the fraudulent intent may be inferred from the acts of the purchaser after sale. Bowen v. Schuler, 41 Ill. 142.

The purchase of goods by one who at the time did not intend to pay for them is such a fraud as will entitle the vendor to avoid the sale, although there were no fraudulent misrepresentations or false pretenses. Farwell v. Hanchett 120 Ill. 573. See also People v. Healey, 128 Ill. 9; Reed v. Pinney, 35 Ill. App. 610.

A fraud committed by one partner in course of partnership business binds the firm, even though the other partners had no knowledge of the fraud. Loomis v. Barker, 69 Ill. 360; Tenney v. Foote, 95 Ill. 99; Wolf v. Mills, 56 Ill. 360.

If several purchase goods for resale with a view to divide the profits arising from the transaction a partnership is thereby created. Lindley on Partnership, 53.

MR. JUSTICE SCOFIELD DELIVERED THE OPINION OF THE COURT.

During the summer of 1894, A. Levy, of Murphysboro, Illinois, bought goods of many wholesale houses in different cities, so that, by the 10th day of the following November, he had accumulated a large and valuable stock for a city the size of Murphysboro. In the latter part of July he was in Cincinnati, Ohio, and made purchases of Heldman & Co., and of Lowman's Sons, appellees. He visited the Heldmans first, and one of the Heldmans went with him to the house of Lowman's Sons, and introduced him to one of the proprietors. The large amount of his proposed purchases aroused suspicion, or at least provoked inquiry, and he was interrogated concerning his means, and what he had bought, or was intending to buy, from other houses. The jury were justified in believing from the evidence that his answers to these questions were designedly false.

The goods bought of Lowman's Sons were billed by them to Levy during the latter part of August, and were to be paid for within four months after October 15th.

On November 10th, Levy, claiming that he was indebted to his three sons, Harris, Michael and Simon, the usees in this action, sold his entire stock to them at a discount of twenty-five per cent, whereby he was divested of all earthly possessions which might be subjected to the levy of an execution. The consideration named in the bill of sale was $9,000. Levy swears that he owed Harris $2,050, Michael $2,400, and Simon $1,000, and that the three agreed to pay four of the claims against him which amounted in the aggregate to $2,550.. By this arrangement at least twelve wholesale houses, of which Levy had bought goods during the summer and fall of 1894, were to be defeated in the collection of their claims, and the business was to be conducted thereafter in the name of Levy Bros., the venerable head of the family retiring from business with no visible means of support.

Harris had worked for his father in the store prior to November 10th, and was undoubtedly cognizant of the amount

of his father's indebtedness, and of his father's intention to defraud his creditors. The evidence justifies the inference that the other two sons were also cognizant of these facts; but if it were not so, the knowledge of Harris would be imputable to his brothers, who were his partners in the purchase and management of the store. Wolf v. Mills, 56 Ill. 360; Loomis v. Barker 69 Id. 360; Tenney v. Foote, 95 Id. 99; Wiley v. Thompson, 23 Ill. App. 199; 1 Lindley on Partnership, 150.

It is a strong circumstance against the good faith of the purchase by the three sons that neither of them testified upon this or any kindred question. The father was put upon the stand by the appellees and endeavored to uphold the transaction as being altogether innocent and legitimate. But his two dozen "I don't remembers," and many other equivalent expressions, behind which he took refuge when pressed by questions propounded by counsel for appellees, lead fairly to the inference that there was something in the transaction which he deemed it advisable to conceal.

After the transfer of the goods by the father to the sons, Lowman's Sons elected to rescind their sale to A. Levy, and brought an action of replevin for the goods. The plaintiffs dismissed their suit before trial, but retained the goods which had been delivered to them under the replevin writ. The present suit was brought on the replevin bond to recover damages for an alleged breach thereof, and appellees defended as to all but nominal damages, on the ground that the goods had been procured by A. Levy through false and fraudulent representations, and also with the intention of never paying for them, by reason whereof the vendors had the right to rescind the sale and to recover the goods, not only from A. Levy, but also from his sons, who were fraudulently helping their father, through the form of a purchase, to hinder, delay and defraud his creditors.

The verdict of the jury assessing the damages of Harris, Michael and Simon at one cent, is a finding that this defense

has been established, and as such is abundantly justified by the evidence in this record.

The evidence sufficiently shows that A. Levy knowingly made false representations in material matters to Lowman's Sons for the purpose of obtaining credit, and that Lowman's Sons sold to him on the faith of these representations. In such case there can be no doubt as to the right of the vendors to rescind the contract and reclaim the goods from the vendee.

The evidence also shows that when A. Levy bought the goods he did so with the intention of never paying for them, and this, of itself, would amount to fraud, authorizing a rescission of the contract. Bowen v. Schuler, 41 Ill. 192; Farwell v. Hanchett, 120 Id. 573; The People v. Healey, 128 Id. 9.

The evidence also shows that the sale by A. Levy to his sons was fraudulent, through and through, and that the sons were parties to the fraud.

The question now arises whether or not there is such error of law in the record as to require the reversal of a judgment which is clearly right under the evidence.

It is said that the court erred in permitting the depositions of the Heldmans to be read to the jury. In these depositions the defendants detail the fraudulent representations made to them by A. Levy at the time of his purchase of goods from them. This was proper evidence under the authorities. Hertz v. Kaufman, 46 Ill. App. 591; Castle v. Bullard, 23 How. 172. Another act of fraud is admissible to prove the fraud charged where the evidence shows that the two acts were committed in pursuance of a common purpose to defraud. Johnson v. Beeney, 5 Bradw. 601; Hanchett v. Riverdale Distillery Co., 15 Id. 57; Henderson v. Miller, 36 Ill. App. 232. That there was such a common purpose in this case is justly deducible from the circumstances proved on the trial. The proof of fraud is not limited to direct evidence. The perpetrator of a fraud skulks in the dark and uses indirect agencies to accomplish his end, and the law lays hold of him with circumstances and infer-

ences therefrom, and drags him from his covert, and compels him to make restitution, notwithstanding his vigorous protest that eye-witnesses must be produced before he can be compelled to render an account.

A few general observations in this connection will relieve us from the necessity of specially considering many of the questions which have been presented in the argument of the case.

It was incumbent on appellees to prove two distinct propositions: First, that the father bought through fraudulent representations, relied upon by the vendors, or with the intention of never paying for the goods; and, second, that the purchase by the sons, was for the purpose of enabling their father to defraud his creditors. To say that certain evidence is not proper on the question of fraud in the purchase by the sons is not a concession that the court erred in admitting it, for this very evidence may have been proper proof of fraud in the purchase from appellees such as would justify a rescission of the contract of sale. After it has been determined that the sale by appellees to the father can be rescinded, it yet remains to be shown that the goods can be taken from the custody of the sons on the ground of a fraudulent purchase by them from their father. If evidence is proper for one purpose, it must be admitted for that purpose, regardless of its inapplicability to other parts of the case.

The contention that the court erred in admitting the testimony of A. Levy when he was called as a witness by counsel for appellees can not be considered, for the reason that no exceptions to any ruling of the court in admitting this testimony have been preserved in the bill of exceptions. After the witness had given part of his testimony, appellants objected to all that had gone before and to all that might follow. Under the practice of appellate courts in such cases, this general objection can not be considered.

The rulings of the court in giving, modifying and refusing instructions have been subjected to the usual ordeal of criticism. The instructions, when considered together, pre-

sented the law with reasonable accuracy, and a judgment so well fortified by the evidence as is the one in this record, should not be reversed for technical errors.

The judgment is affirmed.