ANDREW PRINS

v.

SOUTH BRANCH LUMBER CO.

</div>

1. NEGOTIABLE INSTRUMENTS—NOTICE.—Where a party is about to receive a bill or note, if there are any such suspicious circumstances accompanying the transaction or within the knowledge of the party as would induce a prudent man to inquire into the title of the holder or the consideration of the paper, he shall be bound to make such inquiry, or if he neglects to do so, he shall hold the bill or note subject to any equities which may exist between the previous parties to it.

Prins v. South Branch Lumber Co.

2. WRITING ON NOTE PUTTING INDORSEE ON INQUIRY.—Where a line was drawn over the words "order of" in the printed blank form on which a note was written and on the margin of the note in red ink was written "This note is not negotiable," *held*, that the words written on the margin are to be taken as a part of the note, and that they were sufficient to put the indorsee on inquiry so as to charge him with equities between the original parties to the note.

3. NOTICE.—Where the matter of which express notice is proved is merely a circumstance collateral to the main fact with notice of which it is sought to charge the party, the collateral circumstance, if sufficient to put him upon inquiry leading to the truth, will, in general, be regarded as good notice of the ultimate fact to be established.

ERROR to the Superior Court of Cook county; the Hon. ELLIOTT ANTHONY, Judge, presiding. Opinion filed October 27, 1886.

Messrs. KRAUS, MAYER & BRACKETT, for plaintiff in error; that one who purchases a negotiable instrument innocently, is yet put upon inquiry where an inspection of the instrument itself points directly to a defect which requires explanation, cited 1 Daniel on Negotiable Instruments, 3d Ed., § 795; Wade on Notice, 2d Ed., § 90; Story on Promissory Notes, § 197; Eagle v. Northwestern Mutual Life Ins. Co., 92 U. S. Supreme Ct. 330, 342; Sturges v. Metropolitan Nat. Bank, 49 Ill. 220; Flint v. Lewis, 61 Ill. 299; Frink v. Ryan, 3 Scam. 322.

Any memorandum written under or in the margin, or indorsed upon a note, constitutes an essential part of the contract, when such is the intent of the parties: Jones v. Fales, 4 Mass. 254; Gibson v. Hawkins, 69 Ga. 354; Wait v. Pomeroy, 25 Mich. 25; Grimison v. Russell, 14 Neb. 521; Fletcher v. Blodgett, 16 Vermont, 26; Johnson v. Heagan, 23 Maine, 329; Franklin Saving Institution v. Reed, 135 Mass. 365; Costello v. Crowell, 127 Mass. 293; Blake v. Coleman, 22 Wis. 416; Hartley v. Wilkinson, 4 Camp. 127; Lusk v. Lancashire, 2 Camp. 205; Chalmely v. Darley, 14 Meeson & W. 344; 2 Parsons' Bills, 539 *et seq.;* 1 Daniel on Negotiable Instruments, 3d Ed., § 149.

Whatever puts one upon inquiry amounts in judgment of law to notice: Henneberry v. Morse, 56 Ill. 394; Harper v. Ely, 56 Ill. 179; McLaurie v. Thomas, 39 Ill. 291.

Messrs. Frank J. Smith & Helmer, for defendant in error.

Moran, J.    Appellee brought an action against appellant, and upon the trial in the court below, the following note was introduced in evidence by the plaintiff:

($862.75.)                                Chicago, August 1, 1886.

Two months after date, for value received, I promise to pay to the order of Novy & Weindl the sum of eight hundred and sixty-two and 75-100 dollars, at the office of J. F. Stepinain, Chicago, Ill., without interest.

This note is not negotiable.    (Written in red ink on margin of note.)

                                         Andrew Prins.

Indorsed on the back as follows:

                        Novy & Weindl,
                        J. M. Rezny,
                        J. M. Rezny.

And thereupon plaintiff rested.

Defendants then made the following offers of proof:

First.    The defendant offers to prove that the memorandum on the face of the note in evidence, "This note is not negotiable," appearing in red letters, was written before the note in evidence was executed, and before the note was delivered to the payees, Novy & Weindl, and before it was delivered to the plaintiff in this case.

Second.    Defendant offers further to prove that the memorandum, "This note is not negotiable," was written at the time of the execution of the note, in the presence of, and by the agreement and consent of the maker, Andrew Prins, and the payees, Novy & Weindl, which agreement was as follows:

That inasmuch as the defendant, Prins, had theretofore, as an accommodation, and at the request of Novy & Weindl, guaranteed a note of Novy & Weindl, given them for money which they actually owed to a lumber company, it was agreed that the note in evidence should not be negotiated, transferred or parted with by Novy & Weindl.

Third.    The defendant further offered to prove that the note so guaranteed by Prins as an accommodation for Novy &

Weindl, the payees of the note in suit, was for $1,003; that when that note so guaranteed became due, Novy & Weindl did not pay the same, and the defendant, Prins, was compelled to and did pay it by virtue of his guaranty; and that at the time the memorandum was placed upon the note and the note delivered to the payees, it was agreed that in case Prins should be compelled to pay the note, which he had guaranteed as above, then the note in suit should be canceled and surrendered to Prins.

The court ruled out the offers and gave judgment against appellant for the amount of the note and interest, and the case comes to this court by appeal.

The only question involved is, whether striking out the words "order of" in the printed blank form on which the note was written, and writing, "This note is not negotiable" on the margin of the note, were sufficient to put the indorsee on inquiry and thus charge him with equities between the original parties to the note. The rule adopted by the Supreme Court of this State, at an early day, as to the duty of the indorsee of a note or bill, and which has been adhered to without modification, is, that "where a party is about to receive a bill or note, if there are any such suspicious circumstances accompanying the transaction or within the knowledge of the party as would induce a prudent man to inquire into the title of the holder or the consideration of the paper, he shall be bound to make such inquiry, or if he neglects to do so, he shall hold the bill or note subject to any equities which may exist between the previous parties to it." Russell v. Hadduck, 3 Gilman, 233; Sturges' Sons v. Met. Nat. Bank, 49 Ill. 220; Flint v. Lewis, 61 Ill. 299.

Even by courts where a rule more generally favorable to the dealer in negotiable paper is applied than obtains in this State, the doctrine of notice is rigidly applied when the marks or words from which notice is inferable appear on the face of the paper. Thus in Goodman v. Simonds, 20 Howard, 343, it is said by Mr. Justice Clifford, speaking for the court: "Where the supposed defect or infirmity in the title of the instrument appears on its face at the time of the transfer, the

question whether a party who took had notice or not is in general a question of construction, and must be determined by the court as a matter of law; and so it was understood by this court in Andrews v. Pond, 13 Peters, 65, where it is said that a person who takes a bill, which upon the face of it was dishonored, can not be allowed to claim the privileges which belong to a *bona fide* holder. If he chooses to receive it under such circumstances, he takes it with all the infirmities belonging to it, and is in no better condition than the person from whom he received it. And the same doctrine was adopted and enforced in Fowler v. Brantly, 14 Peters, 318, where, in speaking of a promissory note so marked as to show for whose benefit it was to be discounted, this court held that all those dealing in paper "with such marks on its face must be presumed to have knowledge of what it imported." But it is a very different matter when it is proposed to impeach the title of a holder for value, by proof of any facts and circumstances outside of the instrument itself.

The contract between the original parties to the paper is to be gathered from all that appears on it; or, as it is said, "the contract must be collected from the four corners of the document," and any memorandum made by agreement of parties before signing will bind all parties to the instrument, and all who have or may be legally presumed to have notice thereof. 1 Dan. on Negotiable Instruments, Sec. 149 *et seq.*, and authorities cited. In Jones v. Fales, 4 Mass. 245, the suit was brought upon a note on which, at the left side thereof, were written the words [Foreign Bills] included in brackets. Chief Justice Parsons said: "It is a reasonable conclusion that they must be all taken to be the words of the maker of the note, written before it was delivered to the promisee, and not the words of the promisee. * * * If they are the words of the promisor they must be considered either as idle words, or as a part of the promise to which he gave his signature. * * * I am not authorized to consider them as words without meaning; and I do not think it material whether they were part of the original contract, or added in explanation of it. For when the promisee took the note with these words on it, he was

Prins v. South Branch Lumber Co.

subject to the explanation in the memorandum, if it was one, as much as he would be bound by these words, if they were a part of the promise."

What marks or words upon a note will be held sufficient to put a taker upon inquiry, so as to charge him with equities, has been illustrated in some of the cases. In Hall v. Hale, 8 Conn. 336, the defense was that the defendant was an accommodation indorser, and that the note was given in renewal of another note, but was fraudulently negotiated. It was shown that the word "renewal" had been written upon the paper near the bottom, and had been erased by a pen-knife, but by inspection and close examination, certain letters in that word might be seen and the word in part made out. The court reversed the case for a misdirection of the jury, and in the opinion say: "It is undoubtedly clear that if the word 're-newal' had been fairly written on the note in question and re-mained upon it at its negotiation to the plaintiff, or if it had been partially erased, leaving such appearances as would, in the ordinary course of business, have excited the suspicions of a careful and prudent man, the defendant would be authorized to defend himself on the ground assumed by him."

In Wiggins v. Bush, 12 Jones' Rep. 306, a note dated on the 24th of May, but made on the 22d of April, had entered upon it a memorandum of the day on which in fact it was exe-cuted and indorsed. The court held that by the indorsement of the real date, the plaintiffs, who were indorsees, had such information as ought to have led to inquiry into the manner of obtaining it. Say the court: "The post-dating of the note which was indorsed was an extraordinary circumstance, and must have created suspicion. The neglect of the plaintiffs to make any inquiry ought to subject them to the consequences of the transaction between the original parties." From the foregoing cases and others which we might cite, we are led to the conclusion that the words, "This note is not negotiable," plainly written, as they were, on the margin of the note in suit, are to be taken as part of the note; that these words are not to be regarded, as counsel for appellee contends they should be, as a statement of a legal opinion that the note was

not a negotiable one, but that the fair import of the words is, that it was agreed between the parties that the note was not to be negotiated.

That these words should be written on the note was a singular circumstance, and one that would naturally arrest the attention and arouse the suspicion of an ordinarily prudent man, and such a one would not be willing to rest upon the conclusion that the words were idly written, and were meant to express merely an unsound legal opinion. Nor does the fact that the agreement that the note should not be negotiable does not of itself show that there were in fact equities between the original parties, prevent the application of the principle.

The rule is, "where the matter of which express notice is proved is merely a circumstance collateral to the main fact with notice of which it is sought to charge the party, the collateral circumstance, if sufficient to put him upon inquiry leading to the truth, will, in general, be regarded as good notice of the ultimate fact to be established." Wade on Notice, Sec. 10, and cases cited.

It is true, as counsel argues, that the note was still assignable, so that the assignee could maintain a suit upon it in his own name, but that is by force of the statute, and does not relieve the assignee from the equities existing between the original parties to the note, of which he was put on inquiry by the words upon the note, and of which he must therefore be held to have had notice.

What appellee could have learned by inquiry is of the same effect as if it was stipulated at large on the face of the note itself, and the case, therefore, falls directly within the rule in Frink v. Ryan, 3 Scam. 322.

The proof offered by appellant was competent and constituted a good defense to the note, whether appellee took it before or after maturity. It is unnecessary to notice other errors assigned. For the error indicated the judgment must be reversed and the cause remanded.

<div align="right">Reversed and remanded.</div>