## Edward Hines v. Union National Bank of Chicago and Samuel B. Barker.

### Same v. Same.

1. PROMISSORY NOTES — *Effect of the Word Non-Negotiable When Used in.*—While there is nothing in the mere fact that a note is made by its terms "non-negotiable," which can prevent its assignment so as to vest in the assignee the right to sue upon it in his own name, yet, such a note when assigned, is subject to all the equities existing between the maker and the payee at the making thereof, or which may arise between them up to, at least, the time when the maker acquires notice of its assignment. The word " non-negotiable " written across the face of a note charges the assignee with notice of every fact which inquiry of the maker would reveal.

2. GUARANTY—*Amount Due, but Unpaid on. Allowed as a Set-off.*— A executed a note to B, which was by its terms non-negotiable, and B assigned the note to C. Before receiving notice of the assignment, A guaranteed the payment of certain notes given by B to D, and B becoming

Hines v. Union National Bank of Chicago.

insolvent he paid part of the amount due on the notes and they were assigned to him, D holding his guaranty for the amount still unpaid. *Held*, that A was entitled to set-off against his note to B in the hands of C, the amount due on his guaranty to D.

**Bill,** for an injunction, etc., and order refusing leave to file a bill of review.  Appeals from the Superior Court of Cook County; the Hon. JOHN BARTON PAYNE, Judge, presiding.  Heard in this court at the March term, 1897.  First case reversed with directions, appeal dismissed in the second case.  Opinion filed March 15, 1897.

MORAN, KRAUS & MAYER, attorneys for appellant

TENNEY, MCCONNELL & COFFEEN, attorneys for appellee.

MR. PRESIDING JUSTICE SHEPARD DELIVERED THE OPINION OF THE COURT.

These two appeals were separately docketed, and by order of court were submitted upon one record, with separate assignments of error, and upon one set of abstracts and briefs.

One appeal is from the original decree in the cause, and the other is from an order refusing leave to file a bill to review and reverse such decree.

On or about September 29, 1892, the appellant executed and delivered to the appellee, Samuel B. Barker, his certain non-negotiable promissory note, dated and in words and figures as follows:

"$15,000.                               CHICAGO, June 27, 1892.

On or before May 1, 1895, after date, I promise to pay to the order of S. B. Barker $15,000, at his office in Chicago, value received, with interest at seven per cent from date until paid.   This note is non-negotiable.

                                        EDWARD HINES."

And, at the same time, he delivered to said Barker certain certificates of shares of stock, for which Barker gave to him a receipt as follows:

"                    CHICAGO, September 29, 1892.

Received of Edward Hines, 150 shares of stock of the Edward Hines Lumber Company, certificate No. 24 for

fifty shares, No. 23 for 100 shares, as collateral security for a certain non-negotiable note for $15,000, dated June 27th, for three years.

S. B. Barker."

Such certificates were indorsed by Hines, but no transfer of them upon the books of the Lumber corporation was ever made.

Afterward, and some time between October, 1892, and May 29, 1893, Barker indorsed the note and delivered it, with the share certificates attached, to the appellee, Union National Bank, as collateral security to former loans made by the bank to Barker.

Of such transfer by Barker to the bank, Hines had no notice or knowledge until at about the date of maturity of the note, on May 1–4, 1895. Prior to that time Barker failed in business, and has ever since continued to be wholly insolvent.

On May 16, 1895, which was shortly after the note matured, the bank brought suit on the note against Hines, who to that action pleaded specially certain matters of defense, which will be mentioned later, and included the same facts that are stated in the bill herein, and claimed an offset, and to such plea the bank filed replications.

On March 17, 1896, and while said action at law upon the note remained pending, the bank served notice upon Hines that it would, on the twenty-eighth day of that month (changed by agreement to April 4, 1896), offer said stock certificates at public sale.

Thereupon, on April 3, 1896, the original bill in this cause was filed by Hines. Such bill averred, in substance, the foregoing facts, except that the note and stock certificates were delivered by Barker to the bank in April, 1893, and further averred an additional set of facts, upon which, together with those that have been mentioned, it was prayed for an injunction against the bank from selling the stock, for an accounting, and for a surrender of the stock certificates. A cross-bill was filed by the bank whereby it was prayed that its alleged lien upon the stock might be foreclosed by

a sale thereof under the direction of the court, and that the proceeds arising from such sale might be applied *pro tanto* in payment of said note, and that Hines be decreed to pay the remainder.

The additional facts relied upon by appellant and set up in his bill were, in substance, that on or about March 21, 1893, Barker requested him, Hines, to guarantee to McElwee & Carney, lumber dealers, his, Barker's, notes for about $21,000, given for lumber purchased by Barker, but a delivery of which was withheld, and that Hines, in pursuance of such request, did guarantee Barker's said notes to McElwee & Carney, to the extent of the amount of his, Hines', said non-negotiable note for $15,000 to Barker, and that Barker held and owned said $15,000 note, and held said certificates of stock at the time such guaranty by Hines to McElwee & Carney was given; that Barker, becoming and continuing to be insolvent, defaulted in the payment of the notes to McElwee & Carney, so guaranteed by Hines, and that Hines has been compelled to pay and take up said notes.

The alleged request by Barker to Hines, and the latter's guaranty to McElwee & Carney, were evidenced by the following letters:

"CHICAGO, March 21st, 1893.

FRIEND HINES: I bought a lot of lumber from McElwee & Carney during Mr. Carney's absence, giving them my notes for it. Carney has just returned and says that they have too much of my paper, and wishes to return the notes and cancel the sale, unless I can give him other paper as security. This I can not conveniently do just now. As I have relied on this lumber for spring trade, I want you to help me out by indorsing the notes, or guaranteeing same, so that I can get the lumber. This I feel will be satisfactory to Mr. Carney, and you will be amply safe in doing so, as I always pay my paper promptly, and as I hold your note for $15,000 and interest, though not due until May 1, 1895, and as I talked with you considering how it is made out, I can not make use of it. When I have helped you,

surely you ought to try and return the favor. I will rely upon your doing so. I will be easier soon, as trade will be better, and I intend to crowd sales. Come down to-morrow and let me know if you will do so.

Very truly yours,
S. B. BARKER."

" CHICAGO, March 22, 1893.
Messrs. McElwee & Carney, City.

GENTLEMEN : I am in receipt of a letter from S. B. Barker requesting me to indorse or guarantee some notes which Mr. Barker owes you for lumber purchased by him from you. I do not care to place my name on paper which is to be put in circulation, but, as you know. Mr. Barker holds my non-negotiable promissory note for $15,000, with interest at seven per cent, and which matures May 1, 1895, at which time there will be due thereon about $18,000. I have told Mr. Barker, while I will not indorse his paper, I will guarantee the same to the amount which will be due on my notes, which he holds, when the same becomes due, provided that if Mr. Barker fails to pay the notes which he gives to you, I shall be given time on my liability until my note to him matures. If you care to accept his notes with my guarantee upon the above condition you can do so and hold this letter as evidence of my obligation.

Very truly yours,
EDWARD HINES."

The disputed facts in the case are but few, and upon the determination of two predominant ones, and the legal effect thereof, the entire case hinges.

The first one is, when, in point of time, did the bank acquire the $15,000 note made by Hines, and the stock certificates pledged as collateral thereto; and, as a legal consequence, what effect did such acquiring have upon the purported guaranty by Hines to McElwee & Carney ?

The bank contends that the note was in its possession, and for a valuable consideration, before March 22, 1893, which was the date on which the alleged guaranty by Hines to McElwee & Carney purports to have been made.

The decree found that the note and stock came to the hands of the bank "as early as two or three days prior to May 29, 1893."

Such conclusion of the chancellor, so embodied in the decree, was reached upon a consideration of a good deal of conflicting evidence, which, as we look at the case, need not be reviewed by us. Even if it be not correct, and that, as claimed by the bank, the note and stock collateral came to the hands of the bank before the purported contract of guaranty was made by Hines to McElwee & Carney, it is plainly established that Hines had no notice of such transfer until long afterward—whichever may be the true date of such transfer—and not until after he had acquired the notes given by Barker to McElwee & Carney.

While there was nothing in the mere fact that the $15,000 note was made by its terms "non-negotiable," which would prevent the payee thereof from assigning the note so as to vest in the assignee the right to sue upon it in his, or its, own name, yet such note, when assigned, remained subject to all the equities existing between the maker and the payee at the making thereof, and which might subsequently arise between them up to, at least, the time when the maker acquired notice of its assignment. The non-negotiable words written across the face of the note charged the bank, as assignee thereof, with notice of every fact which inquiry of Hines, as maker, would have revealed.

It will not be questioned that had Barker continued to own the note at the time of its maturity, and had sued Hines upon it, the latter might have set off against Barker whatever equities existed in his, Hines', favor, and especially the equity in Hines' favor growing out of his purported guaranty of Barker's notes to McElwee & Carney.

And so we regard it as being beyond question that the bank, as assignee of the note would not, until at least notice of the assignment was given to Hines, occupy a better position as against such equities than Barker would have held, had he continued to hold the note. Prins v. South

Branch Lumber Co., 20 Ill. App. 236; Weber v. Rosenheim, 37 Ill. App. 72; Goldman v. Blum, 58 Tex. 630; 1 Daniel on Negotiable Instruments (2d Ed.), Sec. 742; Secs. 3, 4, 5 and 6; Chap. 98, entitled Negotiable Instruments, Rev. Stat., Ill.

We, therefore, regard it as being immaterial whether the note was assigned to the bank before or after the making of the guaranty, no notice of the assignment having been given to Hines until after his equity arose under his purported guaranty to McElwee & Carney.

The second question of fact of importance in the case, is whether or not Hines made the guaranty referred to.

The bank claims that the purported contract of guaranty by Hines to McElwee & Carney was fictitious, and was manufactured for the purpose of defeating the claim of the bank, long after Barker's failure, and after Hines knew that the note had been assigned to the bank.

Upon that question, the chancellor found in favor of the bank, and that the guaranty contract was fictitious and fraudulent.

The decree in that respect was as follows:

" The court further finds that said Barker did not on or about March 21, 1893, request said complainant, Edward Hines, to guarantee the payment of notes which said Barker had given to McElwee & Carney, nor did Barker then write the letter of that date addressed to said Hines, which is set out in the bill of complaint, nor did said Hines on or about March 22, 1893, execute and deliver to said McElwee & Carney his guaranty in writing; but that both of said documents were executed long after their apparent date and after the failure of said Samuel B. Barker; that said documents were not genuine instruments written or executed in the course of the transactions to which they purported to refer, but were executed by the complainant for the fraudulent purpose of creating evidence of an apparent defense to the note of $15,000, above referred to; that no genuine guaranty of the notes of said Barker held by McElwee & Carney was ever given by said Edward Hines or received or acted upon by said McElwee & Carney."

Perhaps it is not necessary to consider whether such findings are sustainable under the evidence, in view of the fact that Hines had no notice of the assignment to the bank until after he acquired and became the owner of the notes given by Barker to McElwee & Carney, for becoming such holder and owner, he would be entitled to a set-off to their extent against the non-negotiable note held by the bank, irrespective of whether he gave the purported guaranty or not.

But we think the findings of the decree that the guaranty contract was a cooked up device, is not sustained by the evidence.  The evidence upon which the court relied as its basis for such findings was mainly the testimony of Barker that both of the copied letters were prepared and written after the suit at law upon the $15,000 note was begun, and the appearance of the letter book in which the letter dated March 22, 1893, was copied.

The testimony of Barker was, in our opinion, greatly overborne by the testimony of Hines and Carney, and the circumstances of the lumber transaction to which reference in the letter is made.  There can be no doubt from the evidence that Barker's financial circumstances when the lumber purchase was made, and of which Carney knew before the lumber was delivered, were such as to make it a very imprudent business operation to trust him to the extent of $21,000 without some security, and it appears plainly enough that Carney, who was away when his partner made the sale to Barker objected to the sale as soon as he returned, and refused to consent to a delivery of the lumber except upon some security being given, and so told Barker.

It is claimed that the letter-press copy of the guaranty letter of March 22, 1893, from Hines to McElwee & Carney, which appears in the letter book certified to us in the bill of exceptions, presents very strong evidences of having been inserted at a much later day than its purported date.

Those evidences are, mainly, a discoloration of the paper upon which the copy is impressed, and the fact that it seems to be crowded into a page upon which another letter of the same date was copied.

We do not consider the discoloration of the paper as indicating much of consequence. It might have occurred from a variety of causes which are known to all men, whether scientifically educated or not. And besides, the discoloration does not appear to be confined to that sheet or page alone when the whole book is looked at.

It is not infrequent in the book that two letters are copied on the same page, although the letter in question is more crowded in space on the page, and in spacing between the lines (typewritten), and is more distinct in the impression than most of the other letters. But upon such evidence we can not convict men of unimpeached business repute of what is but little less than forgery.

It is contended by the appellee that because Hines had, before the hearing, paid to McElwee & Carney only $1,000 on account of his guaranty to them, his right to a set-off against the bank is limited to that amount. Admitting that under some circumstances such might be the case, it can not be so here.

The contract of guaranty, by its terms, was to the extent that should be due on the $15,000 note at its maturity, provided that Barker should fail to pay his notes held by McElwee & Carney.

It was proved that after Barker's failure, and about a year before his notes matured, McElwee & Carney were required by their bankers, who had discounted them or held them as collateral, to take them up, and when they did so, they indorsed and delivered four of the notes, aggregating about $16,500, principal, to Hines, but without releasing him from his guaranty. In other words, McElwee & Carney indorsed the notes without recourse, and surrendered them to Hines, but still held him liable to them on his separate guaranty. McElwee & Carney could no longer look to Barker, who was absolutely worthless, financially, but for Barker's obligation Hines was substituted, by virtue of his guaranty contract from which he was never discharged; and we think it was immaterial that Hines had not yet discharged his guaranty. He was still liable on his contract of

guaranty, and it was against that liability that the $15,000 note was security, and for the amount thereof he was entitled to a set-off.

A decree in accordance with the prayer of the original bill filed by Hines should have been given, and the cross-bill of the bank should have been dismissed. The decree is therefore reversed, with directions to the Superior Court to enter a decree to that effect.

This disposes of the appeal from the order denying leave to file a bill to review the decree, and such appeal is, therefore, dismissed.

The affidavit of Barker and the affidavits in reply thereto, filed in this court for the first time, have no proper place in the record, and they are accordingly ordered to be stricken from the files.

First case reversed, with directions, and in the second case appeal dismissed.