#### AT THE

## NOVEMBER SESSION, 1867, IN BOSTON.

PRESENT :

Hon. GEORGE T. BIGELOW, CHIEF JUSTICE.
Hon. EBENEZER R. HOAR,
Hon. REUBEN A. CHAPMAN,
Hon. HORACE GRAY, JR.,   } JUSTICES.
Hon. DWIGHT FOSTER,
Hon. JOHN WELLS,

## SUFFOLK COUNTY.

### COMMONWEALTH *vs.* EMIGRANT INDUSTRIAL SAVINGS BANK & another.

The alteration of the number of one of a series of negotiable bonds of the Commonwealth, not required by law to be numbered, which does not change the tenor of the bond so as to affect either in substance or in form the written contract or the proof thereof, is not material.

An immaterial alteration of a negotiable bond payable to the bearer, although made with fraudulent intent, does not avoid it against a holder who took it afterwards in good faith, for value, without notice of or reason to suspect the alteration.

BILL OF INTERPLEADER filed by the attorney general, pursuant to *c.* 19 of the Resolves of 1866,* against the Emigrant Industrial

---

* " *Whereas,* The Emigrant Industrial Savings Bank, a corporation established by the laws of the State of New York, is in possession of and claims to be the

Savings Bank, a corporation under the laws of New York, and William S. Houghton, for the purpose of determining whether five bonds of the Commonwealth, for one thousand dollars

legal owner of five bonds of the Commonwealth, for the payment of one thousand dollars each, with interest coupons attached for each six months' interest; all of which bonds are dated October the first, in the year eighteen hundred and sixty-one, payable as follows, namely : three on the first day of July, in the year eighteen hundred and seventy-six; one on the first day of July, in the year eighteen hundred and seventy-four; and one on the first day of July, in the year eighteen hundred and seventy-one; and with interest semi-annually with coupons attached;

"*And whereas*, W. S. Houghton, of Boston, also claims to be the legal owner of the same bonds, and entitled to the sums due thereon, upon the ground that the same were stolen from him;

"*And whereas*, It is alleged by said Houghton that the numbering of said bonds, since the same were stolen, has been fraudulently altered, so that the same are void as against the Commonwealth ;

" *And whereas*, Other parties holding bonds of the Commonwealth, numbered like those in possession of the said Savings Bank, claim that their said bonds are original unaltered bonds of the Commonwealth ;

" *Therefore*, For the purpose of determining whether any, and, if any, which, of said bonds have been so fraudulently altered as to be void against the Commonwealth, or, if otherwise, then to whom said bonds now held by said savings bank belong, and are payable by the Commonwealth,

" *Resolved*, That whenever the said Emigrant Industrial Savings Bank shall deliver said bonds held by them to the treasurer and receiver-general of the Commonwealth, with the interest coupons attached, to abide the judgment of the court in the suit hereinafter provided for, and shall notify said treasurer and receiver-general that it has duly constituted and appointed an attorney within this Commonwealth to receive service of process and appear in the suit hereinafter mentioned, the attorney-general is hereby directed to commence such suit in equity in the supreme judicial court for the county of Suffolk as may be proper, in the name and in behalf of the Commonwealth, against all the claimants of said bonds held by said savings bank, and against said other parties, to compel such parties to come into court and interplead, and also establish, as well against the Commonwealth as against each other, the validity of said bonds, and their respective rights and claims thereto; and the said bonds so deposited in the hands of the treasurer and receiver-general shall, in case the same are declared void by the court as against the Commonwealth by reason of the fraudulent alteration thereof since the same were stolen, be delivered to said Houghton, and with the interest warrant thereon paid to him according to their tenor; but if said bonds shall not be deemed void by the court, the same shall be deliv-

each, dated October 1, 1861, and issued by virtue of the St. of 1861, *c.* 216, had not been made void, as against the Common wealth, by reason of a material alteration thereof; and, if not, then what were the respective rights of the respondents in and to the same, in the manner provided by the resolve.

The case was reserved by *Hoar*, J., for determination by the full court. The material facts appear in the opinion.

*S. Bartlett & F. Bartlett,* for the Commonwealth and the respondent Houghton, besides cases cited in the opinion, cited *Nunnery* v. *Cotton,* 1 Hawks, 222; *Calvert* v. *Baker,* 4 M. & W. 417.

*J. G. Abbott,* for the Emigrant Industrial Savings Bank.

Hoar, J. This case is one of great practical importance, and presents a question of much interest to the owners of a species of securities in which very large amounts of property are invested. Both parties have strong claims to the consideration of the court, and come before us with equities which make a decision against either painful. We have in effect to decide which of two innocent parties shall suffer a considerable loss; and their rights are found to depend upon the application of principles in a manner which may lead to very important consequences.

Upon the evidence reported, we have no difficulty in finding the principal facts in issue. The five.bonds which form the subject of the controversy are shown by satisfactory proof to be the same which were stolen from Mr. Houghton in May 1863. On the 7th of November 1863 they were received by the Emigrant Industrial Savings Bank, in the usual course of business, for a valuable consideration, and without notice, express or implied, of any defect in the title which the bank then acquired, and without any reasonable cause to question their genuineness. In the interval of time between these dates the numbers of the bonds had been fraudulently altered; by whom, it does not

ered to such party as by decree of the court in such suit shall be deemed entitled to the same, upon the payment by such party of the costs of the Commonwealth in said suit."

appear; but the natural inference would be, by the thief, or some one in privity with him. It is suggested in argument on behalf of Mr. Houghton, that there is reason to suppose that the alteration was made by the broker from whom the bank received the bonds. The reasons assigned for this suggestion are, that the coupons for interest due in January 1864 have never been presented for payment, and are not accounted for; that the broker disappeared from New York, and it is not known what has become of him; that he paid the interest on his loan for which the bonds were given as collateral, up to December 31, 1863; that it is probable that the January coupons were then given up to him, as the comptroller of the bank has no doubt that they were attached to the bonds when the bank received them; and that this would lead to the conclusion that the broker, learning from Mr. Houghton's advertisements that the bonds had been stolen, had altered the numbers to enable him to dispose of them in the market without suspicion, and was afraid to present the coupons for payment for fear of detection. These are certainly suspicious circumstances, though perhaps they tend as strongly to prove that the broker was privy to the theft. The only importance attached to them is this, that they might tend to show that the alteration of the numbers of the bonds was made by a lawful owner of them; and that the rule in relation to the effect of such alterations might be different from that which would be applicable if they had been made by a thief. But there is no evidence whatever upon the point whether the broker's possession of the bonds was lawful or otherwise. If he had honestly acquired a perfect title to them, it can hardly be presumed that, instead of openly asserting it, he would have resorted to a needless and dangerous fraud. The evidence, therefore, on this part of the case, seems to us too uncertain and imperfect to warrant any satisfactory conclusion.

These bonds were payable to the holder or bearer, and were negotiable instruments which would pass by delivery. The important questions which we have to decide are, 1. Is the alteration of the numbers upon the bonds a material alteration? 2. If not, is it such an alteration as, if made with a fraudulent

purpose, will discharge the contract, so that it will be invalid in the hands of a *bonâ fide* holder for a valuable consideration without notice, whose title is acquired after the alteration ?

The statute of the Commonwealth under which these bonds were issued did not require them to be numbered. St. 1861, c. 216. The alteration of the numbers upon the bonds did not in any particular change the liability of the obligor, either in time, place or amount. Neither the rights or interests, duties or obligations of either party to the contract were affected by it. Indeed, it was not an alteration of the written contract at all. *Smith* v. *Crooker*, 5 Mass. 540. *Wheelock* v. *Freeman*, 13 Pick. 165. *Brown* v. *Pinkham*, 18 Pick. 172. Even under the strictness of criminal pleading, where a bank bill is set forth in an indictment according to its tenor, the number of the bill need not be set forth, and its omission is not a variance. *Commonwealth* v. *Bailey*, 1 Mass. 62. *Commonwealth* v. *Stevens*, Ib. 203. If the numbers were worn or torn off from the paper, it is evident that all the operative words of the complete contract would remain. Nor does the number of the bond change or affect the legal evidence or mode of proof of the contract, as in the case of an attesting witness ; and there is therefore no analogy to the cases in which it has been decided that the addition of the signature of an attesting witness was a material alteration, though not affecting the terms of the contract. *Homer* v. *Wallis*, 11 Mass. 309. *Adams* v. *Frye*, 3 Met. 103.

No case has been cited in which such an alteration has ever been held to be material, and we are not aware that any can be found.

The reasons given in the text-books and adjudged cases for the rule that a material alteration avoids a written instrument are two ; first, that no man shall be permitted, on grounds of public policy, to take the chance of committing a fraud, without running any risk of losing by the event, when it is detected; the other, that the identity of the instrument is destroyed. *Masters* v. *Miller*, 4 T. R. 329. 1 Greenl. Ev. § 565. It is argued that the number of the bond constitutes a part of the identity of the instrument. But this is merely an ambiguous use of the word

"instrument." It is a part of the identity of the paper, but not of the contract, any more than any device, picture or impression upon it would be. The presence or absence of the number does not change the written contract, in substance or in form, nor affect the proof of it. The purpose of putting it on the bond is a collateral object, convenient to the maker, and convenient and important to the holder as a means of distinguishing his property, but not affecting his rights against the maker under the written agreement. We think the change of the numbers was not a material alteration of the bonds.

The remaining question involves a point of greater difficulty. It has been held that an immaterial alteration, if made with a fraudulent intent, will avoid a written instrument. 1 Greenl. Ev. § 568. 2 Parsons on Notes & Bills, 572, and cases there cited. But it is to be noticed that each of these text writers gives as the reason of the rule, that the party who loses the benefit of the writing has wilfully and wrongfully destroyed the identity of the contract. But if the rule is not thus limited in its application, and if the attempt to perpetrate a fraud may be justly punished by a loss of his right to enforce the contract, it remains to be considered whether the incapacity to sue will follow the instrument into the hands of an innocent holder, who has taken it in good faith. It has indeed been decided in the case of a material alteration of a note, that it becomes invalid even in the hands of a subsequent indorsee for value. *Wade v. Withington*, 1 Allen, 561. But the opinion in that case was put upon the express and only ground that the identity of the contract was destroyed; that the indorsee had not received the note which the promisor made. We do not find that it has ever been held that even a fraudulent alteration of a paper upon which a contract is written, leaving the language of the contract, in form and substance, unchanged, and not affecting the manner of its legal proof, would so far affect the validity of the contract as to make it invalid in the hands of an innocent holder, wholly ignorant of the fraud. The general rule is that he who is guilty of a fraud shall not be permitted to avail himself of it. If the rule is extended further, and if, on grounds of public policy, it should

be held that one who claims title under the fraudulent person shall only succeed to his rights, it is difficult to see the just application of the principle to the case at bar. The innocent holder of a negotiable security payable to bearer does not take his title from that of any previous holder, but under the original contract of the promisor, as construed by the law. The thief who stole these bonds had no title to them whatever. The innocent holder does not claim under him, in form or substance. The promisor may have parted with them without consideration, but that makes no difference. The promise to pay to the bearer or holder attaches to the possession for value without notice of the unaltered contract.

The numbers placed upon these bonds gave to the Commonwealth means of checking or detecting an over-issue of them, perhaps some security against forgery, and the means of tracing the particular instrument through successive changes of ownership. To the owners of the bonds after they were issued they afforded the means of identifying their property. But this might have been done by a private mark upon the back of the paper or by the stamping of the owner's name upon it. We cannot think that the fraudulent removal of such a mark of identification could affect the rights of parties not privy to the fraud, nor affected with notice of it. The case is wholly different from those cited in argument, of securities tainted with usury, and the like, where a statute makes the contract void, into whosesoever hands it may come. Here is no statute impediment. Nor is the holder met with the difficulty that, though without his own fault, he has failed to receive the contract which the promisor made. He is innocent of any fraud; he has the contract unchanged in form, and with nothing added or taken away which affects its obligation or proof. It is a question of the policy of the law, which discountenances fraud but seeks to inflict the penalty for it only on the fraudulent; and which protects the free circulation of negotiable paper.

In the courts of New York, it has recently been held that the fraudulent alteration of the numbers of stolen bonds would not invalidate the title of a subsequent innocent holder. *Smith*

v. *Illinois Central Railroad Co.* Superior Court of the City of New York, March T. 1865. *Birdsall* v. *Russell*, 29 N. Y. 239.

We are all of opinion that the Emigrant Industrial Savings Bank has established its title to the bonds in question against the Commonwealth, and is entitled to a decree accordingly.