## H. CLAY MERRITT

*v.*

## A. W. BOYDEN & SON.

*Opinion filed June 19, 1901.*

1. BILLS AND NOTES—*when alteration of note amounts to a forgery.* If a note for one hundred dollars is altered, without the maker's knowledge, by the erasure of the word "one" and the substitution of the word "thirteen" before the word "hundred" in the body of the note, the alteration amounts to a forgery and the maker is not liable upon the note, even as against *bona fide* purchasers thereof without notice of the change.

2. SAME—*the subsequent alteration of a complete note discharges maker from liability.* If a note is complete at the time it is signed by the maker, its subsequent alteration by raising the amount thereof through obliteration of the same by the use of chemicals or other ingenious device, without the knowledge or consent of the maker, will discharge him from liability upon the note.

3. SAME—*when maker is liable upon raised note.* If the maker of a note has by careless execution of the same left room for an alteration to be made by insertion without defacing the instrument or exciting the suspicion of a careful man, and the note, by reason of the opportunity afforded, is filled up with a larger amount than it bore when signed, the maker is liable thereon, as altered, to any *bona fide* holder without notice.

4. SAME—*note for "hundred dollars" is not necessarily a note for "one hundred dollars."* A note for ". . . . . . hundred dollars," is not necessarily a note for "one hundred dollars" but is an incomplete note, and if the maker delivers it to a third person to be negotiated, the maker so far makes such person his agent as to be bound by his act in filling out the note, as against an innocent purchaser. (*Yocum v. Smith,* 63 Ill. 321, distinguished.)

5. SAME—*mere negligence does not deprive purchaser of character of a bona fide holder.* Mere negligence, however gross, is not sufficient to deprive the purchaser of a note of the character of a *bona fide* holder, but there must be proof of bad faith in order to affect him with notice or knowledge of defects in the note.

6. SAME—*effect of alteration of marginal figures of note.* The marginal figures placed above and outside the body of a note are not a part of the note itself, in the sense that their unauthorized alteration will necessarily deprive the purchaser of a note of the character of a *bona fide* holder as against the maker.

7. APPEALS AND ERRORS—*when Supreme Court cannot determine whether trial court erred in admitting note in evidence.* Whether the

trial court erred in admitting a note in evidence without requiring explanatory proof of alleged apparent alterations cannot be determined by the Supreme Court where the original note is not preserved for its inspection.

8. TRIAL—*instructions leaving questions of implied knowledge and authority to jury are erroneous.* Implied knowledge and implied authority are questions of law, and hence instructions which leave such questions for the determination of the jury are erroneous.

*Merritt* v. *Boyden & Son*, 93 Ill. App. 613, affirmed.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Henry county; the Hon. W. H. GEST, Judge, presiding.

This is an action of assumpsit, brought by the appellees against the appellant, Merritt, and one L. Silverman on a note made by Silverman and Merritt, which note was payable to their own order and endorsed by them in blank. The declaration contains a special count on the note, and the common counts. The following is a copy of the instrument sued upon: ¡

"$1300.00                          KEWANEE, ILL., *Oct. 4, 1897.*

"One year after date I promise to pay to the order of ourselves thirteen hundred dollars at Kewanee, Ill. Value received, with interest at the rate of seven per cent per annum.

Endorsed:                                  L. SILVERMAN,
    L. SILVERMAN.                          H. CLAY MERRITT."
    H. CLAY MERRITT.

Default was entered against Silverman. Merritt pleaded the general issue, and denial of the execution of the note sued on, sworn to by him. The jury rendered a verdict in favor of the plaintiffs for the sum of $1519.92, upon which judgment was entered on March 27, 1900. An appeal from this judgment was taken to the Appellate Court, and it has there been affirmed. The present appeal is from such judgment of affirmance.

The defense, set up by the appellant upon the trial below, was that the note in question was signed by him

for the accommodation of Silverman, and as surety for Silverman; that the note, as originally signed, was a note for $100.00, but that it was afterwards fraudulently changed by altering the figures "100.00" in the upper left hand corner of the note to "1300.00," and by either erasing the word "one" in the body of the note and inserting in its place the word "thirteen," or by writing the word "thirteen" in the body of the note in a blank space left before the word "hundred," so as to make the note appear to be a note for $1300.00, instead of $100.00; that the note was without consideration, and that the appellant, Merritt, received none of the proceeds of the sale of the note.

N. F. ANDERSON, E. C. GRAVES, and WILSON & MOORE, for appellant:

The change of the marginal figures, together with the appearance of the words "thirteen" and "hundred," was apparent on the face of the note, and therefore the note ought not to have been introduced in evidence until an explanation of the changes had been shown by the plaintiffs. 3 Randolph on Com. Paper, (2d ed.) sec. 1785; *Walters* v. *Short*, 5 Gilm. 257; *Montag* v. *Linn*, 23 Ill. 503; *Hodge* v. *Gilman*, 20 id. 437.

On the question of notice, everything that appears within the four corners of the paper must be considered. *Prins* v. *Lumber Co.* 20 Ill. App. 236.

On the issue raised by the plea of non-assumpsit, sworn to, plaintiff must not only prove the signature of the maker, but also prove the allegation of the declaration that the promise was made as alleged. *Walters* v. *Short*, 5 Gilm. 257; *Yost* v. *Harvester Works*, 41 Ill. App. 556.

The marginal figures are a material part of the note. *Corgan* v. *Frew*, 39 Ill. 31; *Hall* v. *Bank*, 5 Dana, 258.

To alter, without the authority of the maker, the marginal figures avoids the note, even in the hands of a *bona fide* purchaser for value, and no recovery can be had by such purchaser.

If a note is complete, without blanks, at the time of its delivery, the fraudulent increase of the amount by taking advantage of a space left without such intention, although it may be negligently, will constitute a material alteration and operate to discharge the maker. *Angle* v. *Insurance Co.* 92 U. S. 331.; *Bank* v. *Stowell*, 123 Mass. 196; 1 and 3 Randolph on Com. Paper, secs. 187, 1754, 1770; *Bank* v. *Clark*, 51 Iowa, 264; *Fordyce* v. *Kosminski*, 49 Ark. 40; *Bank* v. *Bank*, 22 L. R. A. 686; *Holmes* v. *Trumper*, 22 Mich. 427; *Burrows* v. *Klunk*, 70 Md. 451; *Bank* v. *Williams*, 174 Pa. 66.

There is no confidential relation established between the maker of a note and the purchaser of the same that would bind the maker by some unauthorized alteration. *Bank* v. *Stowell*, 123 Mass. 196.

A material alteration of a note by one of the joint makers thereof before its delivery, without the knowledge of the other maker, makes the note void against the other promisor, although the alteration was made without the knowledge of the payee and without fraudulent intent. The rule is the same if made by a stranger. *Draper* v. *Wood*, 112 Mass. 315; *Fay* v. *Smith*, 1 Allen, 417; *Aldrich* v. *Smith*, 37 Mich. 470; *Hamilton* v. *Hooper*, 46 Iowa, 515; 2 Am. & Eng. Ency. of Law, (2d ed.) 196.

BLISH & LAWSON, (A. P. MILLER, of counsel,) for appellees:

The question whether there is an alteration of an instrument offered in evidence, apparent on its face, is primarily for the court. If the alteration is not apparent the instrument is entitled to go to the jury on proof of its execution, and the burden of proof to show the claimed alteration is upon the party alleging it. 2 Daniel on Neg. Inst. sec. 1421; Byles on Bills, 492; *Harris* v. *Bank*, 22 Fla. 501; *Meikel* v. *Savings Institution*, 36 Ind. 355; *Wilson* v. *Hayes*, 40 Minn. 531; 1 Greenleaf on Evidence, sec. 564, notes; *Wilde* v. *Armsby*, 6 Cush. 314.

Marginal figures are no part of a note, and alteration of them is an immaterial alteration and will not avoid the note in the hands of a *bona fide* holder without notice of such alteration, even if fraudulent.   2 Daniel on Neg. Inst. secs. 86, 1499; *Smith* v. *Smith,* 1 R. I. 398; *Commonwealth* v. *Bank,* 98 Mass. 12.

Notice to charge a *bona fide* holder of negotiable paper taken in the ordinary course of business before maturity, must be actual knowledge of infirmity sufficient to make his conduct in taking the note an act of bad faith. *Goodman* v. *Simmons,* 20 How. 343.

The rights of a *bona fide* holder of negotiable paper are to be determined by the simple test of honesty and good faith, and not by mere speculation as to his proper diligence or negligence.   *Comstock* v. *Hannah,* 76 Ill. 530.

When the maker of the note has himself, by careless execution of the instrument, left room for any alteration to be made, either by insertion or erasure, without defacing it or exciting the suspicions of a careful man, he will be liable upon it to any *bona fide* holder without notice, when the opportunity which he has afforded has been embraced and the instrument filled up with a larger amount or different terms than those which it bore at the time he signed it.   2 Daniel on Neg. Inst. sec. 1405.

This liability is placed by some of the decided cases on the ground of implied authority. *Bank* v. *Sargent,* 85 Me. 349; *Spitler* v. *James,* 32 Ind. 202; *Davis* v. *Lee,* 26 Miss. 505; *Gillespie* v. *Kelley,* 41 Ind. 158; *Redlich* v. *Doll,* 54 N.Y. 234; *VanDuzer* v. *Howe,* 21 id. 531; *Fullerton* v. *Sturgis,* 4 Ohio St. 529; *Kitchen* v. *Place,* 41 Barb. 465; *McGrath* v. *Clark,* 56 N.Y. 36; *Cason* v. *Bank,* 97 Ky. 487; *Pahlman* v. *Taylor,* 75 Ill. 629; *Elliott* v. *Livings,* 54 id. 213; *Harvester Co.* v. *McLean,* 57 Wis. 258; *Canon* v. *Grigsby,* 116 Ill. 157; *Bank* v. *Neal,* 22 How. 107.

By other courts the liability of the maker of negotiable paper with blanks improperly filled is placed on the ground of negligence. The leading case is *Young* v. *Grote,*

4 Bing. 253, followed by *Yocum* v. *Smith*, 63 Ill. 321, *Harvey* v. *Smith*, 55 id. 224, and *Anderson* v. *Warner*, 71 id. 20.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

When the note, sued upon in this case, was signed and endorsed by the appellant, Merritt, and L. Silverman, Silverman took the note, and, through his action or that of others acting for him, the note was sold and delivered to the appellees, Boyden & Son. The proof tends to show—and such proof is substantially undisputed—that the appellees purchased the note in good faith without notice of any defect in it, and paid therefor the sum of $1300.00.

The defense, made by the appellant in the trial court, was based upon two theories: First, that the words, "one hundred" were written in the body of the note before the word "dollars," and that the word, "one," was in some way erased, or taken out of the note, and the word, "thirteen," was written in its place before the word "hundred;" second, that, when the note was signed and endorsed by the appellant, the word, "one," was not in the body of the note, but that there was a blank space before the word, "hundred," and that, in this blank space and before the word "hundred," the word, "thirteen," was written. Whether the note was altered in the one or the other of the modes thus stated, the proof tends to show, and is substantially undisputed, that the change was not made by the appellant, Merritt, or by any one authorized by him to make it, and that he knew nothing about the change, and had no intimation of it, until about the time the note fell due.

*First*—If the note was altered by the erasure of the word "one" in the body of it and the insertion of the word "thirteen" in the place of the word "one" before the word "hundred," then the alteration amounted to a forgery, and appellant is not liable upon the note, even though

the appellees were *bona fide* purchasers thereof for value without notice or knowledge of the change. If the amount named in a note is raised by erasing what is written, such alteration is a material one, and the note is thereby vitiated, so as to become void. When a note is changed materially either by a payee or transferee, not only is it vitiated and destroyed in the hands of the party responsible for the alteration, but no recovery can be had upon it against the maker by a person into whose hands it has come after the change was made, even though the latter be a *bona fide* endorsee for value without notice of the alteration. (2 Am. & Eng. Ency. of Law,—2d ed.—pp. 193, 255, 257; 3 Randolph on Commercial Paper,—2d ed.— sec. 1754). Where a note is complete at the time when it is signed by the maker, its subsequent alteration by raising the amount thereof through obliteration of the same by the use of any chemical process, or other ingenious device, without the knowledge or consent of the maker, will discharge him from liability upon the note. (*Burrows* v. *Klunk*, 70 Md. 460). "When a negotiable instrument is materially altered, no recovery can be had thereon against any one, who became a party thereto prior to the alteration, by any person into whose hands it has come since the alteration, even though he be a *bona fide* holder without notice." (4 Am. & Eng. Ency. of Law,—2d ed.—p. 332; *Angle* v. *Northwestern Mutual Life Ins. Co.* 92 U. S. 340). In *Burwell* v. *Orr*, 84 Ill. 465, we said: "The alteration of the instrument, on which the suit was brought, was material, and, under the circumstances, must be presumed to have been made by, or with the consent of, the holder. If so, the whole instrument, by the alteration, became *ipso facto* void. No subsequent endorsement, even to a *bona fide* purchaser for value, could give validity to a void instrument." (*Pahlman* v. *Taylor*, 75 Ill. 629). The rule seems to be well settled that, in case of a material alteration of a note, it becomes invalid even in the hands of a subsequent endorsee for value.

(*Wade* v. *Withington*, 1 Allen, 561; *Commonwealth* v. *Emigrant Industrial Savings Bank*, 98 Mass. 17).

The trial court, in instructing the jury upon the trial below, announced the law in regard to the effect of a material alteration, as it is above stated.  On behalf of the appellant the court gave to the jury the following instruction, numbered 6:

"You are further instructed that, if you believe from the evidence in the case that, when the note sued on was originally made, it contained the words 'one hundred' written in the blank in the body of the note before the printed word 'dollars,' and that, after it was signed and endorsed by Silverman and the defendant, Merritt, it was altered without the knowledge, authority or consent of said Merritt by erasing the word 'one,' and writing in the word 'thirteen' where the word 'one' originally was, then you will find the issues for the defendant."

The judgment of the circuit court in behalf of the plaintiffs below, appellees here, and the affirmance of that judgment by the Appellate Court, are conclusive as to the facts, so far as this court is concerned.  The courts below have found, that the note was not altered by erasing the word "one" and writing in its place the word "thirteen."

*Second*—The second theory of the defense, made by the appellant in the court below, was that, when he signed and endorsed the note, there was a blank space before the word "hundred," and that this blank space was subsequently filled by inserting the word "thirteen" therein without the knowledge or consent of the appellant.  The testimony of the appellant is quite positive to the effect, that he signed a note for only $100.00, but his testimony leaves it doubtful whether, when he signed the note, the words "one hundred" were written in the body of the note, or whether only the word "hundred" was written therein without the word "one" before it and with a blank space before the word "hundred."  Appellant at one time

stated "that the note was written either 'hundred' or 'one hundred,' I didn't know which."

Upon the theory that, when the note was signed and endorsed by appellant, the word "hundred" was written in the body of it, but that the word "one" was not written before the word "hundred," and that a blank space was at that time before the word "hundred," which blank space was subsequently filled without the authority or knowledge of the appellant, the liability of the appellant must be determined by the application of principles of law entirely different from those which have already been stated.

As bearing upon the second theory of the defense as thus announced, the court below gave to the jury, upon behalf of the appellees, the following instruction, numbered 1:

"The jury are instructed that, if you believe from the evidence that the note in question was signed and endorsed by the defendant, H. Clay Merritt, and one Silverman, and delivered by Merritt to Silverman to negotiate, and that, at the time said note was so signed and delivered to said Silverman, only the word 'hundred' was written therein, and that a space was left blank before the word 'hundred' sufficient to write therein the word 'thirteen,' and that said Silverman wrote, or caused to be written, in said blank space the word 'thirteen,' so that the body of said note read 'thirteen hundred dollars,' and then sold or caused to be sold the same to the said plaintiffs, and that said plaintiffs purchased said note in the due course of business before maturity for value in good faith and without notice of such change; then the defendant, H. Clay Merritt, is liable in this case for the face of said note and interest thereon, and you should so find by your verdict."

Appellant contends, that the note was only a note for $100.00 whether the word "one" was written in the body of it before the word "hundred," or whether there was a

blank space before the word "hundred." We are unable to concur in this view. If there was a blank space before the word "hundred," it was not necessarily a note for just $100.00, but the amount of the note was left blank. In other words, the note was not a complete note, as it would have been if the word "one" had been inserted before the word "hundred" when it was signed. Where the maker of a note delivers it to a third person to be negotiated, and such note, as an undertaking on the part of the maker, is not finished, but is to be afterwards completed, the maker so far makes the person, to whom he so delivers the note, his agent, as to be bound by the acts of the latter to an innocent purchaser of the note. When the maker of a note has himself, by careless execution of the instrument, left room for an alteration to be made by insertion without defacing the instrument, or exciting the suspicion of a careful man, and the instrument, by reason of the opportunity thus afforded, is subsequently filled up with a larger amount than that which it bore at the time it was signed, the maker will be liable upon it, as altered, to any *bona fide* holder without notice. In the hands of such a holder a negotiable instrument may be enforced, if a sum in excess of what was authorized by the maker is inserted in a blank left for the amount of the instrument. (4 Am. & Eng. Ency. of Law, —2d ed.—p. 337; *Abbott* v. *Rose*, 62 Me. 194; *Fordyce* v. *Kosminski*, 49 Ark. 42.) In *Angle* v. *Northwestern Mutual Life Ins. Co. supra*, the Supreme Court of the United States said: "Negotiable instruments are frequently delivered for use, with blanks not filled; and, in respect to such instruments, it is held, that where a party to such an instrument entrusts it to the custody of another for use, with blanks not filled up, whether it be to accommodate the person to whom it was entrusted or to be used for the benefit of the signer of the same, such negotiable instrument carries on its face an implied authority to fill up the blanks necessary to perfect the same; and the

rule is, that, as between such party and innocent third parties, the person to whom the instrument was so entrusted must be deemed the agent of the party who committed the instrument to his custody, in filling the blanks necessary to perfect the instrument. * * * Where blanks exist in negotiable securities, delivered to another for use, the custody of the paper, under such circumstances, gives the custodian the right to fill the blanks." In *Young* v. *Ward*, 21 Ill. 223, this court said: "It is the settled doctrine, that if a party signs his name to a blank paper, and delivers it with authority to fill the blank above his signature with a note or bill for a particular amount, or to a specified person, and the person receiving it fills it for a larger amount, or to a different person, and it is passed in the course of business, without notice of the facts, the maker is bound by the instrument." (2 Daniel on Negotiable Instruments,—4th ed.—sec. 1405.)

In such cases the liability of the maker is placed by some authorities upon the ground of implied authority; that is to say, upon the ground that the maker of the note, by leaving the blank therein, impliedly authorizes the person, to whom he delivers it, to fill the blank. (4 Am. & Eng. Ency. of Law,—2d ed.—p. 337, and cases cited in notes; *Market, etc. Nat. Bank* v. *Sargeant,* 85 Me. 349; *Spitler* v. *James,* 32 Ind. 202; *Greenfield Savings Bank* v. *Stowell,* 123 Mass. 198).

By other decisions the liability of the maker of negotiable instruments with blanks improperly filled is placed upon the ground of negligence on the part of the maker in executing the note with unfilled blanks in it. (*Yocum* v. *Smith,* 63 Ill. 321; *Harvey* v. *Smith,* 55 id. 224; *Anderson* v. *Warne,* 71 id. 20; *Seibel* v. *Vaughan,* 69 id. 257; *Weidman* v. *Symes,* 120 Mich. 657).

In the case at bar, the evidence tends to show that the note in question was signed by the appellant with a blank space before the word "hundred." When he had

signed and endorsed the note, he delivered it to Silverman, his joint maker, for the purpose of having it negotiated, or knowing that Silverman intended to negotiate it. Under the circumstances, and in view of the authorities referred to, the appellant was liable to the appellees, as *bona fide* purchasers of the note without notice of any defect in it, whether such liability rests upon the ground of implied authority to Silverman to fill the blank space, or upon negligence on the part of the appellant in leaving the blank space unfilled. By his conduct he either made Silverman his agent with implied authority to fill the blank, or he was guilty of such negligence in leaving the blank unfilled, that an improper and unauthorized filling of it by Silverman cannot be set up as a defense against the appellees, who purchased the note in good faith without notice. (*Johnson Harvester Co.* v. *McLean*, 57 Wis. 264).

The question here is not exactly the same question, as that which arose in the case of *Yocum* v. *Smith, supra.* In the latter case, the note in controversy was originally made for $300.00, and was altered after execution and delivery from $300.00 to $320.00 without the authority, knowledge or consent of the maker; there, as we understand the facts, the note, as originally drawn, contained the words "three hundred dollars," and, a blank space, which had been left between the words "hundred" and "dollars," was filled by adding the words "and twenty" before the word "dollars," thus making the note a note for $320.00. In *Yocum* v. *Smith, supra,* the note was a complete note for $300.00. In the case at bar, however, the note, signed by the appellant, was not a complete note, but was a blank note for "...... hundred dollars," and was made complete by inserting the word "thirteen" before the word "hundred." If the note in the present case had contained the words "one hundred dollars," and the words "and twenty" had been added before the word "dollars," so as to make it "one hundred and twenty

dollars," this case would be on all fours with the case of *Yocum* v. *Smith, supra.*

Counsel for appellant refer to a large number of cases, which hold as follows: "It has now, however, become the established rule that, if the instrument was complete without blanks at the time of the delivery, the fraudulent increase of the amount by taking advantage of a space left without such intention, although it may be negligently, will constitute a material alteration and operate to discharge the maker." (1 Randolph on Commercial Paper,—2d ed.—sec. 187; *Angle* v. *Northwestern Mutual Life Ins. Co.* 92 U. S. 331; *Greenfield Savings Bank* v. *Stowell,* 123 Mass. 196; *Fordyce* v. *Kosminski,* 49 Ark. 40; *Burrows* v. *Klunk,* 70 Md. 460; *Knoxville Bank* v. *Clark,* 51 Iowa, 264; *Holmes* v. *Trumper,* 22 Mich. 427.) An examination of the facts in the cases last referred to will show that, in each of the cases, the instrument, which was altered, was complete at the time of its delivery. The leading case is that of *Greenfield Savings Bank* v. *Stowell, supra,* the opinion in which was delivered by Mr. Justice Gray, now of the Supreme Court of the United States, then chief justice of the Supreme Court of Massachusetts. In the *Stowell case,* all the decisions upon this subject then extant are reviewed, and the cases are distinguished. There, the note, as originally drawn, was a note for $67.00 and was altered by inserting the words "four hundred and" in a blank space left before the words "sixty-seven" in the body of the note, and by inserting the figure "4" between the dollar mark and the figures "67" at the top of the note, thus changing a note for $67.00 into a note for $467.00. It will be observed that, there, the note, before it was altered, was a complete note for $67.00. There can be no question that the *Stowell case,* and the other cases above referred to which follow the *Stowell case,* are diametrically opposed to the cases of *Harvey* v. *Smith,* 55 Ill. 224, and *Yocum* v. *Smith,* 63 id. 321, above referred to. The latter cases follow and are based upon *Young* v. *Grote,*

4 Bing. 253, the authority of which the *Stowell case* and the other cases following it regard as having been weakened and shaken by subsequent decisions both of the English and of the American courts.

It is not necessary, however, for us here to discuss the comparative merits of the view taken by this court in *Yocum* v. *Smith, supra,* and *Harvey* v. *Smith, supra,* and the view taken by the cases opposed to them in view of the fact that, in the case at bar, the note was not a complete note as to the amount mentioned in it, as were the notes in *Harvey* v. *Smith, supra,* and *Yocum* v. *Smith, supra,* and in *Greenfield Savings Bank* v. *Stowell, supra,* and the other cases above referred to.

We are of the opinion that the court below committed no error in giving to the jury instruction numbered 1, which was given in behalf of the appellees.

*Third*—The appellant asked, and the court refused to give, twenty-five instructions numbered from 17 to 42 inclusive. It is claimed by the appellant, that the court erred in refusing to give these instructions. It is impossible for us within the limits of this opinion to examine each one of these instructions separately, and to comment upon the particulars, in which they are claimed to be correct statements of the law. Their refusal constitutes no such error, as would justify us in reversing this judgment. Without considering each instruction separately, it is sufficient to group them under certain general heads, and note their general characteristics.

Some of the instructions announce the same principle, which is embodied in appellant's instruction numbered 6 above quoted. The refusal of these instructions did no injury to the appellant for the reason that the substance of them was given in said instruction numbered 6.

Some of the instructions are based upon the theory, that mere negligence, or a want of proper diligence, is sufficient to deprive the purchaser of a promissory note of the character of a *bona fide* holder thereof. It is claimed,

on the part of the appellant, that there was sufficient upon the face of the note here sued upon to put the appellees, as purchasers thereof, upon inquiry as to the real facts in regard to the execution of the note. There was certainly nothing in the body of the note to excite the suspicion of the holder. While there is some testimony given by experts to the effect that the word "hundred," was written before the word, "thirteen," was written, still there seems to have been room enough to insert the word "thirteen" before the word "hundred" without exciting any suspicion in the mind of a party, proposing to purchase the note, that both words had not been written at the same time. Nor does it appear, that there was anything in the figures, $1300.00, placed in the upper left hand corner of the note, which would create in the mind of a proposed purchaser the obligation to make inquiry. The only peculiarity about the figures, which counsel for appellant referred to in his offer of proof, was that the two figures 13 were larger than the two ciphers in $1300.00, and that the ciphers placed after the figures 1300 to indicate that there were no cents, to-wit, $1300.00, were smaller than the ciphers in the main body of $1300. We are not prepared to say, that the difference in the size of the figures was such an indication of a defect in the note, as to arouse the suspicion of a cautious man. However this may be, it is the doctrine of this court that mere negligence, however gross, is not sufficient to deprive a party of the character of a *bona fide* holder, but that there must be proof of bad faith on the part of the holder, in order to affect him with notice or knowledge of defects in the note purchased by him.

In *Comstock* v. *Hannah*, 76 Ill. 530, we endorsed the following proposition (p. 535): "The party who takes it (commercial paper) before due, for a valuable consideration, without knowledge of any defect of title, and in good faith, holds it by a title valid against the world. Suspicion of defect of title, or the knowledge of circum-

stances which would excite such suspicion in the mind of a prudent man, or gross negligence on the part of the taker, at the time of the transfer, will not defeat his title. That result can only be produced by bad faith on his part. * * * The duty of active inquiry does not rest on the purchaser of commercial paper to avert the imputation of bad faith. The rights of the holder are to be determined by the simple test of honesty and good faith, and not by a speculative issue as to his diligence or negligence." Again, in *Shreeves* v. *Allen*, 79 Ill. 553, we held: "Where a person takes an assignment of a promissory note before due, for a valuable consideration, and is not guilty of bad faith, even though he may be guilty of gross negligence, he will hold it by a title valid against the world, and it will not, in his hands, be subject to the defense of failure of consideration; that mere negligence on the part of an assignee of negotiable paper is not sufficient to deprive him of the character of a *bona fide* holder, and that proof of bad faith, alone, will deprive him of that character." The same doctrine was reaffirmed in *Matson* v. *Alley*, 141 Ill. 284. (See also *Spitler* v. *James, supra; Goodman* v. *Simonds*, 20 How. 343; *McGrath* v. *Clark*, 56 N. Y. 36).

The instructions now under consideration were properly refused, because they ignore the rule thus laid down, which requires actual knowledge of an alleged defect, or bad faith, on the part of a holder of a note, to deprive him of the character of a *bona fide* purchaser.

Some of the instructions, asked by appellant and refused, assume that the note in question was a complete note, even though there was a blank, and not the word "one," before the word, "hundred," when the note was signed. They assumed that a note for " . . . . . . hundred dollars" is the same as a note for "one hundred dollars." As the opposite view of this question is taken in the remarks above made, we regard these instructions as having been properly refused.

Some of the instructions were properly refused, because they were based upon the theory, that the marginal figures, placed above and outside the body of a note, are a part of the note itself, so that their alteration will necessarily deprive the purchaser of the note of the character of a *bona fide* holder. Such is not the law. It is true that, under certain circumstances, marginal figures may be used to remove doubt or ambiguity in an instrument. "The marginal figures have been held to be no part of the instrument, but to be intended merely as a convenient index, and as an aid to remove ambiguity or doubt in the instrument itself." (4 Am. & Eng. Ency. of Law,— 2d ed.—p. 130; *Norwich Bank* v. *Hyde,* 13 Conn. 279; *Riley* v. *Dickens,* 19 Ill. 29; *Corgan* v. *Frew,* 39 id. 31). Marginal figures are really not a part of the instrument, but merely a memorandum of the amount. (1 Daniel on Negotiable Instruments,—4th ed.—sec. 86). An alteration or erasure of the marginal figures is an immaterial alteration, and will not affect the rights of the holder of the instrument. (2 Daniel on Negotiable Instruments,—4th ed.—sec. 1499*a*). It has been held that, where the amount is left blank, and the marginal figures are altered to a larger sum, and the blank is filled to correspond, the acceptor of the blank bill is liable to a holder without notice. (*Garrard* v. *Lewis,* 10 Q. B. Div. 30; *Johnson Harvester Co.* v. *McLean, supra*). In *Garrard* v. *Lewis, supra,* it was said: "No alteration, (even if it be fraudulent and unauthorized) of the marginal figure vitiates the bill as a bill for the full amount inserted in the body, when the bill reaches the hands of a holder who is unaware that the marginal index has been improperly altered." It was there further said: "If the holder in the absence of notice would have a right to neglect the marginal figure if it remained unaltered, and to look only to the body of the bill, it would seem to follow that, even if the marginal figure was altered, the holder would have a right in the absence of notice to assume it was altered properly. The holder's

right to look to the body of the bill would not be affected by such alteration if he did not know the alteration was improper. *A fortiori*, his right to look to the body of the bill would remain the same when he did not know that the marginal figure had undergone any alteration at all."

In *Johnson Harvester Co.* v. *McLean, supra*, it was contended that the note was vitiated, because there was an alteration of the figures in the margin of the note which was unauthorized, and, in answer to this, the court said "that the figures were not a part of the note; and further that, if any alteration of the figures was made, such alteration was not known to the parties receiving the note, and there was nothing on the face of the note which would indicate that such alteration had been made."

In *Schriver* v. *Hawkes*, 22 Ohio St. 308, it was held "that the marginal figures were no part of the note, and an alteration of them, and the filling up of the blank for a higher amount would not invalidate the instrument as to a surety. This is certainly the rule where the alteration is made possible by the maker's negligence, *e. g.*, where the amount was left blank except a marginal memorandum of '$500,' and this was altered to $5000 and the blank filled for that amount, the maker was held liable to a *bona fide* holder for such increase of the amount." (*Woolfolk* v. *Bank*, 10 Bush. 504; Randolph on Commercial Paper,—2d ed.—sec. 187, note 158).

In *Smith* v. *Smith*, 1 R. I. 398, the court said: "We do not think the marginal notation constitutes any part of the bill. It is simply a memorandum or abridgment of the contents of the bill for the convenience of reference. The contract is perfect without it. If this is so, any alteration in the figures cannot avoid the contract, because it is no alteration either material or immaterial in the contract." (*Hollen* v. *Davis*, 59 Iowa, 444; *Commonwealth* v. *Emigrant Industrial Savings Bank*, 98 Mass. 12; *Garrard* v. *Haddan*, 67 Pa. St. 82; *Horton* v. *Estate of Horton*, 71 Iowa, 448). As the record in the case at bar is presented

to us, there is no evidence that any alteration in the figures, if the same was material, was known to these appellees when they purchased the note; nor does it appear that there was anything on the face of the note, which would indicate that any alteration had been made.

Some of the instructions were erroneous, as leaving it to the jury to determine from an inspection of the face of the note, whether there had been any alteration in the marginal figures upon the same. In *Goodman* v. *Simonds*, 20 How. 343, the Supreme Court of the United States, said: "Where the supposed defect or infirmity in the title of the instrument appears on its face at the time of the transfer, the question, whether a party, who took it, had notice or not, is in general a question of construction, and must be determined by the court as matter of law." (*Riley* v. *Dickens, supra; Prins* v. *South Branch Lumber Co.* 20 Ill. App. 236; *Horton* v. *Estate of Horton, supra*).

It is true that, where an alteration appears on the face of the note, the holder must explain it, and show that it was made under such circumstances as not to vitiate the instrument. (3 Randolph on Commercial Paper,—2d ed.—sec. 1785; *Walters* v. *Short,* 5 Gilm. 252; *Hodge* v. *Gilman,* 20 Ill. 437). In the case at bar, the note was admitted in evidence by the court upon an inspection thereof. The presumption is, that there were no alterations apparent upon the face of the note, which required explanation, or the court would not have admitted it in evidence without first calling for proof explaining the alterations. Whether or not the court erred in so admitting the note without requiring such explanatory proof, is a matter, which cannot be determined by us, because the original note has not been produced for our inspection. Such a course should have been pursued. (*Riley* v. *Dickens, supra; Yocum* v. *Smith, supra; Prins* v. *South Branch Lumber Co. supra*).

Some of the instructions are erroneous, as leaving it to the jury to determine the question of implied knowl-

edge and implied authority, whereas express knowledge and express authority are questions of fact, and implied knowledge and implied authority are questions of law. (*Pahlman* v. *Taylor*, 75 Ill. 629).

*Fourth*—Appellant complains that the trial court erred in refusing to allow him to introduce proof to show that he had signed numerous other notes for Silverman, and that they had been altered in amount and negotiated for different sums of money. We concur in the following view upon this subject, expressed by the Appellate Court in its decision in this case: "It was not claimed, however, that the appellees ever held any of these notes, or were in any way connected with or aware of them, at the time they purchased the note in question, and the court properly sustained objection to this proof."

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*

Mr. JUSTICE HAND, having been of counsel in this cause in the court below, took no part in its decision here.