### Mrs. P. J. Sexton v. George Barrie et al.

1. CONTRACTS—*Not to be Modified by Parol Evidence of Conversations Had Before Execution.*—A contract, unambiguous in its terms, can not be varied, contradicted or modified by parol evidence of conversations before its execution.

2. SAME—*Construction of, for the Court and Not for the Jury.*—It is the province of the court and not the jury, to construe a contract, with the view of finding from it what was the real intention of the parties.

3. NEGOTIABLE INSTRUMENTS—*Holding as to Marginal Figures.*—Marginal figures upon negotiable instruments are generally held to be no part of the instrument.

4. JURY—*Province to Find Facts.*—A jury should not be left to find that a party did or did not have a good excuse for doing or omitting to do an act, without a direction from the court as to what constitutes a good excuse.

Assumpsit, on a contract of subscription. Appeal from the Superior Court of Cook County; the Hon. THEODORE BRENTANO, Judge presiding. Heard in the Branch Appellate Court at the October term, 1901. Reversed and remanded. Opinion filed July 2, 1902. Rehearing denied.

Sexton v. Barrie.

J. B. LANGWORTHY, attorney for appellant.

FOLLANSBEE & FOLLANSBEE, attorneys for appellees.

MR. PRESIDING JUSTICE FREEMAN delivered the opinion of the court.

This is a suit brought by appellees to recover upon three alleged contracts in and by which it is claimed appellant purchased and agreed to pay for three separate sets of books in course of publication by appellees. It is stated in the latter's brief, that appellees " make subscription editions of standard works. Their books are printed on expensive paper, illustrated by great artists, and are sold at prices that rich people can afford to pay."

It is not necessary to recite the ·contracts in full. They are set out at length in the declaration and are introduced · in evidence as exhibits attached to the deposition of one Rika Salzer, the agent who obtained appellant's alleged · subscriptions. It is sufficient here to refer to so much of them as may indicate the nature of the controversy. The first of them in the order of their introduction as exhibits, consists of a preliminary statement containing a partial description of an " Edition Nationale of Victor Hugo's novels," to be issued in fourteen volumes at $20 a volume, and contains a provision that only the printed conditions and no other conditions or representations will be binding upon the subscribers or publishers. Beneath is the following:

" MESSRS. GEORGE BARRIE &· SON:

On the above noted conditions I subscribe for one copy of Victor Hugo's novels, Edition Nationale, to be delivered to me in fourteen volumes, polished levant, extra tooling, gilt top, as issued, for which I will pay on delivery $20 each.

MRS. P. J. SEXTON,
Date Feb'y 25, 1898.　　　　988 Sheridan Drive,
　　　　　　　　　　　　　　Waukegan, Ill."

Upon this document are certain pencil additions. One of these is an insertion of the words " 3 years, with dramas and poems " before the word " novels " in the first part or

preliminary statement of the conditions of the contract, and another consists of the words " Napoleon Green, Mono· gram A. L. S., Anna Long Sexton," written in the margin of the same part of the alleged contract. Appellees' agent states that appellant wrote the words " 3 years with dramas and poems." This appellant denies. The same agent testi- fies that she, the agent, wrote, with appellant's acquiescence, the other words on the margin. Appellees sent to appel- lant twenty-one volumes of Hugo's works, including the fourteen volumes subscribed for by the terms of the order, and the insertion in pencil of the words " with dramas and poems " is claimed to be the authority for so doing, and thus adding to the order seven more volumes at a price of $20 each.

The second of these contracts purports to be a subscrip- tion for " twenty volumes, Japan vellum edition of His- torical Romances of William Harrison Ainsworth," for which the subscriber agrees " to pay on delivery $10 per volume." This is signed in pencil, " Mrs. P. J. Sexton, 988 Sheridan Road." On the margin are the words, also in pencil, " Bound flexiable at 17.50 a volume. A. L. S." Appellant testifies that she never signed this alleged con- tract and that she did not write the above words, nor any words on the margin, nor elsewhere on said alleged con- tract. She is contradicted in this by the agent, Salzer, and is charged by appellees with $17.50 a volume instead of $10, the price stated in the body of the document. Appel- lant repudiates the whole alleged contract, disclaiming any knowledge of it whatever.

The third contract calls for " a complete copy in twelve volumes, Japan vellum edition, of Historical Memoirs," to be paid for at $10 a volume. On the margin of this are the words " Bound flexiable at 17.50 a volume per." Appellant testifies that these words have been added, since she signed the contract, without authority from her. She is charged by appellees with the additional $7.50 per volume.

These contracts are specially declared on, and by the ver- dict and the judgment of the trial court, appellees have

recovered full damages for alleged failure to comply with their terms and conditions as set forth in the declaration. It is contended in behalf of appellant that the evidence does not justify such recovery.

It is conceded that appellees' evidence was all introduced under the special counts, and that it is necessary to entitle them to recovery for appellees to prove performance on their part in substantial accordance with the terms and conditions of the contract. Appellant urges that not only was this not done, but that appellees' evidence affirmatively shows non-compliance in material respects. To this appellees' attorneys reply that the evidence shows appellant accepted and retained twenty-nine of the sixty-three volumes sold under the contracts, retaining some of them nearly a year, and urge that she is precluded from alleging that the books were not according to contract. The contracts are dated February 28, 1898. About two months later the first books, two volumes of the "Memoirs," were delivered, and in May twenty-one volumes of the works of Victor Hugo. In September two additional volumes of the "Memoirs" were sent, in February, 1899, two more of the same set, and also two volumes of the "Historical Romances," which appellant claims she never subscribed for, never signed the contract for and knew nothing about. It was after the receipt of the first two volumes under this alleged contract last referred to, that appellant's husband, March 27th, wrote that appellant would not receive any more books, and that those sent were subject to appellees' order. They were subsequently shipped back to appellees.

It appears, therefore, that appellant did not receive and had never accepted all the books covered by the alleged contracts. Her acceptance of part of them, if such acceptance there was, and payment on account, can not be construed as a waiver of her right to insist upon compliance by appellees on their part with the terms and conditions of the contracts, and bound her to pay no greater price than she contracted to pay. So far as we are advised no acceptance is proved of any of the books delivered under the alleged

contract for the " Historical Romances," which appellant wholly repudiates, nor is there any acquiescence shown in the extra price charged for the " Memoirs," which makes a difference of $7.50 on twelve volumes, for which appellant testifies she agreed to pay only $10 instead of $17.50 a volume. If appellees are to recover under the special counts setting up the contracts they must prove performance or readiness to perform on their part in accordance with the terms of the instruments. This they have not attempted to do, except in part. They are not seeking to recover on the common counts for goods sold and delivered, but solely under the special counts.

We need not review the evidence bearing upon the controversy whether appellant executed the contract for the " Romances " which she repudiates; nor whether she authorized the marginal additions in pencil to the other contracts which she also repudiates. These marginal notations as interpreted by the trial court have increased the price she is now called upon to pay, by the addition of seven volumes of Hugo at $20 per volume, and by an extra charge of $7.50 a volume over and above the original contract price for the " Memoirs," an increase of $230 on those two contracts alone. This added to $350 charged for the " Romances" ($150 of which is also based upon a marginal notation), makes a total of $580 which is included in the judgment. We have already referred to the condition upon which it is stated in the Hugo contract appellant's subscription thereto is made. By its terms none but the printed conditions in that part of that contract are made binding on either party. This would seem to exclude the pencil marginal additions to that instrument, including the words " with dramas and poems," as a binding part of that contract, unless expressly agreed to by both parties. Let it be assumed that those words were written by appellant and accepted by appellees as principals, and not merely by the agent. The meaning of the contract is still to be derived from the instrument itself. We have, then, the preliminary statement as amended, reading as follows:

" The works of Victor Hugo. With Dramas & Poems. Novels. Conditions of subscription." Further on it is stated, " The work will be issued in fourteen volumes," etc.   Then below this preliminary statement, follows the subscription, which we have quoted above in full, and which is expressly stated to be made " on the above noted conditions," " for one copy of Victor Hugo's novels," " to be delivered to me in fourteen volumes." This is nothing more nor less, including the pencil notation referred to, than a subscription for the fourteen volumes of novels, and it must be so construed. In such construction there is no repugnancy, no difficulty in reconciling written and printed matter. It is the contract as it stands as made by the parties, and must be held to mean what it says, and nothing else. Such a contract, unambiguous in its terms, can not be varied, contradicted or modified by parol evidence of conversations before its execution, a well known rule frequently invoked. (See Town of Kane v. Farrelly, 192 Ill. 521-525.) There is no claim that there was in this case any separate oral agreement for seven volumes more of dramas and poems. Appellees rely on the contract alone. It is the province of the court, not the jury, to construe the contract " with the view of finding therefrom what was the real intention of the parties." Pease v. Rand & L. Desk Co., 100 Ill. App. 244-247; Chickering v. Bastress, 130 Ill. 206-214; Foster v. City, 197 Ill. 264-269.

The contract for the " Memoirs " also, as before stated, contains a marginal notation, which is made the basis of an extra charge of $7.50 a volume above referred to, and included in the judgment. This notation consists of the following words written in pencil on the margin: " Bound flexiable at $17.50 per volume per." This is not signed by appellant, unless it can be regarded as covered by her signature to the body of the contract. These words are interpreted by appellees as changing the face of the contract so as to authorize the delivery of twelve volumes so bound and a charge of $17.50 a volume, instead of $10 a volume, the price agreed to be paid by the terms of the original instrument. If so construed, they change its meaning in a

material respect, and make it an entirely different contract. Marginal figures are generally held to be no part of a negotiable instrument. (See Merritt v. Boyden & Son, 191 Ill. 136–152, and cases there cited.) In the case before us we find no reason in the writing itself to regard these marginal words as part of that contract. They do not purport to order flexible binding, nor do they purport to contain a promise to pay $17.50 a volume. They amount to nothing more than a statement that the books so bound would cost that additional price. To construe them as an order, as was done, is to make a contract for the parties entirely different from that which they have made for themselves in the written instrument. The contract is perfect without them, and they are not necessary to its interpretation. It was error to construe them as a part of and modifying the contract.

The trial court at the request of appellees gave to the jury an instruction which, after stating that the action is brought to recover damages for alleged failure to carry out three alleged contracts set forth in the declaration, continues as follows :

" It will be for you to find from the evidence whether or not any such contracts as those above claimed were entered into, and if so, whether or not the defendant has been guilty of a breach or breaches of them, or has prevented the said plaintiffs from performing said alleged contracts on their part.

" If you believe from the evidence in this case that contracts of the character of those described in the declaration herein were entered into between the said plaintiffs and the said defendant, and that said defendant has, without just cause, been guilty of breaches thereof, and has prevented the plaintiffs from fully performing said alleged contracts upon their part, then you will find the issues herein for the plaintiffs."

It is evidently erroneous to tell the jury that it was for them to find whether " any such contracts as those above claimed were entered into, " and that the plaintiffs could recover for a breach by the defendant of " contracts of the character of those described in the declaration." Recov-

ery can only be had upon proof sustaining the contracts as they are set forth in the declaration, not upon contracts merely of the " character " of those so averred.   Nor is it enough to justify recovery, as the jury are told it is in this instruction, that there has been a breach on the part of the defendants.   There must be proof also of performance or readiness to perform on the part of the plaintiffs.   We agree, furthermore, with the criticism by appellant's attorneys of the words in the instruction, " without just cause."   As said in Austine v. The People, 110 Ill. 248–254, " We do not think the jury should be left to find that a party did or did not have a good excuse for doing or omitting to do an act, without direction as to what, in law, constitutes a good excuse."

It is urged that these errors in the instruction were harmless, but we can not accept the suggestion.   The execution by appellant of the alleged contracts in the form in which they are now produced in evidence is a material point in controversy.   It is conceded that she signed two contracts of the general " character of those described in the declaration," but it is denied that she signed them in the form in which they are declared upon and in which they now appear when offered in evidence.   The jury may have been misled by the instruction and we certainly can not say they were not.

We do not deem it necessary to extend this opinion by consideration of other alleged errors presented in the brief. For the reasons indicated, the judgment of the Superior Court must be reversed and the cause remanded.